**Powhatan S. BRADBIE, Petitioner,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent.**

**Appeal No. 2–81.**

United States Court of Appeals, Federal Circuit.

April 20, 1983.

9. A November 4, 1974 article in *Aviation Week & Space Technology.*

**1332**

Joshua R. Treem, Baltimore, Md., argued for petitioner.

Allen C. Peters, Washington, D.C., argued for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, and Sandra P. Spooner, Washington, D.C.

Before DAVIS, Circuit Judge, COWEN, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

This appeal is from the decision of the Merit Systems Protection Board (MSPB) upholding the action of the Equal Employment Opportunity Commission (the agency) in demoting Powhatan S. Bradbie. The agency action was taken pursuant to Chapter 75 of the Civil Service Reform Act, 5 U.S.C. §§ 7501 *et seq.* (Supp. V 1981). Bradbie appealed in accordance with 5 U.S.C. § 7703(b)(1). Subsequently, at Bradbie's request, this appeal was suspended while Bradbie sought to have proceedings before the MSPB reopened so that he might add a claim that the demotion resulted from racial discrimination. Upon denial of that motion by the MSPB, this appeal was resumed.

On appeal, Bradbie asserts that (1) the agency did not follow proper procedures; (2) the action is unsupported by substantial evidence; (3) demotion was an unduly harsh penalty; and (4) the denial of his motion to reopen was error. We affirm.

### Facts

In November 1979, Bradbie was a GS–13 supervisor in the backlog unit of the agency in Baltimore, Maryland. The unit he supervised was charged with reducing the backlog of discrimination cases filed in that District. His immediate supervisor was the compliance manager of the District, Milton Holmes. Holmes' superiors were the Deputy District Director, Haywood Perry, and the District Director, Dorothy Mead.

In a notice of proposed demotion November 7, 1979, Holmes cited Bradbie's insubordination, misconduct, failure to follow instructions, and failure to provide effective leadership, as reasons for the action, and further asserted that Bradbie's demotion would promote the efficiency of the service.

The specific incidents relied on by Holmes as supporting the above reasons for proposing Bradbie's demotion were:

1. Failure to follow Holmes' instructions given to Bradbie on July 25, 1979, to go forward with a particular case (the Bridges case).
2. Bradbie's disruptive conduct during staff meetings on two occasions, October 16, 1979 and November 5, 1979.
3. Bradbie's failure to instruct and train employees in his unit in accordance with a memorandum of October 19, 1979, from Holmes.

Mead reviewed the proposed demotion action and made the decision demoting him. In her letter of January 10, 1980 to that effect, Mead held that "all of the reasons" were sustained and that Bradbie's demotion would promote the efficiency of the service. Mead did not, however, specifically discuss Holmes' October 19, 1979 memorandum and this omission is a point of contention in this appeal. A further contention is that she based her decision on an additional claim of insubordination.

Finally, Bradbie points to allegedly inconsistent reports of his supervisors to show the unreasonableness of the penalty of demotion.

### Substantial Evidence

█ Bradbie has not and does not deny that the incidents relied on to support his removal in fact occurred. Rather, petitioner has attempted to avail himself of various defenses before the board and here.

With respect to the Bridges case, Bradbie's primary defense, in the sense that there is some evidence to support it, is based on testimony of Perry. In an apparent attempt to side-step philosophical differences between himself and Holmes, Bradbie discussed the Bridges case with Perry, who approved Bradbie's proposal to drop the case, which was directly contrary to the instructions Bradbie had been given by Holmes to go forward. Bradbie did not advise Holmes of his discussions with Perry, or the nature of the disposition in Bridges, prior to Perry's sign-off.

Perry testified that he did not consider Bradbie's discussions with him concerning the Bridges case an impropriety. In general, Perry attempted, according to his testimony, to maintain an open-door policy in departmental disputes. However, Perry did testify that he would not have signed off on the Bridges case if he had been aware that Holmes had not been advised.

Accordingly, we find no error in the decision upholding this charge, as it is amply supported by the evidence.

Similarly, the record supports the MSPB decision that Bradbie's conduct at the staff meetings on October 16, 1979 and on November 5, 1979, was disruptive. With respect to each instance a witness testified he was not disturbed, but five witnesses testified that they were. Further, Bradbie's conduct at the November 5, 1979, meeting indirectly caused at least one of his subordinates to request transfer from the backlog unit.

Finally, with respect to the October 19, 1979, memorandum, the presiding official held that Bradbie failed to comply with two of the three instructions therein. He specifically rejected the third as grounds for the charge. Bradbie does not attack the substance of this decision and we need not, therefore, review the evidence with respect to these charges. No error, as a matter of failure of proof, has been shown.

### Procedural Error

█ Bradbie asserts that it was error for the presiding official to consider his failure to follow instructions contained in the October 19, 1979, memorandum which was not discussed in Mead's final decision letter. To support his assertion that such "deviation" is error, Bradbie relies on *Razik v. United States*, 525 F.2d 1028 (Ct.Cl.1975).

According to Bradbie, the alleged error resulted in prejudice to him as he was prevented from presenting evidence to rebut this charge at the hearing.

The context of the two meetings, on October 16, 1979 and November 5, 1979, is relevant to Bradbie's procedural defense. Bradbie would have us conclude that the November 5, 1979 meeting was called to

embarrass him before his subordinates who attended both meetings. At the earlier meeting, these same subordinates posed problems experienced by them in the backlog unit because of confusion over work assignments, disposal of cases and compliance with formal matters. As a result, Bradbie, as a supervisor, was orally instructed by Holmes to advise his subordinates concerning these matters. These same matters became the subject of discussion at the November 5, 1979 meeting because of an agenda prepared by Bradbie's subordinates and given to Holmes for presentation at the meeting.

To sum up, the agenda prepared by Bradbie's subordinates and presented at the later meeting raised the issue whether he was performing effectively as their supervisor. During the hearing, these subordinates testified concerning items on that agenda. Certain items on the agenda related substantively to instructions that Bradbie received in the October 19, 1979, memorandum.

The presiding official was aware of the specifications for which testimony could be presented [H.T. 534], and he admitted evidence pertaining to the October 19, 1979 memorandum only to the extent that the evidence was within the items on the agenda drawn up by Bradbie's subordinates and presented in the November 5, 1979, meeting. Bradbie, thus, had notice that his conduct at the November 5, 1979 meeting was to be an issue at the hearing. Moreover, Bradbie cannot deny that said notice apprised him that the agenda for the November 5, 1979, meeting would be in issue [H.T. 546].

As held in *Razik,* the test of procedural impropriety turns on the issue of prejudice to the employee. However, Bradbie has not shown, and we do not find, that the record as a whole reflects harm to him. By virtue of notice of charges based on the November 5, 1979 meeting, Bradbie was advised of all issues embraced by the agenda presented at that meeting. Thus, there was no proce-

dural error in the presiding official's determination to admit evidence to the extent that it related to the agenda presented at the November 5, 1979 meeting.*

With respect to Bradbie's assertion that Mead had relied on an additional incident to find insubordination, namely, giving a subordinate a copy of a memorandum to Holmes which discussed the Bridges case, it is apparent that Mead treated this action as an aggravation of the Bridges case charge. In any event, the MSPB decision does not rely on the incident.

### Excessive Penalty and Nexus

■ Bradbie argues that demotion was an excessive penalty and an abuse of discretion, inasmuch as the agency did not prove that Bradbie's demotion would promote the efficiency of the service. In Bradbie's notice of proposed demotion, the statement is made that demotion would "promote the efficiency of the service by allowing the appointment of a qualified supervisor for this essential unit." Testimony before the presiding official by Holmes, Mead and Bradbie's subordinates indicates that Bradbie was ineffective as a supervisor. Accordingly, there is a clear nexus between the charges and the penalty of demotion.

Bradbie raises the issue on appeal that the record shows that Holmes and Mead had considered transfer rather than demotion as an appropriate penalty and this shows that the penalty is too harsh.

With respect to Mead, we are asked to give significance to a form labelled "Adverse Action Procedural Requirements Guide" which she completed and which is dated January 14, 1980. On this form a box is checked "No" in response to the question: "Is there a reasonable relationship between the penalty imposed by the decision letter and the reasons sustained by the decision letter." Since Mead was not examined during her testimony at the hearing before the MSPB concerning the form, we have no ready explanation for her answer.

---

* Since we find no prejudicial error in any event, we need not resolve the disputed issue whether

Mead's decision letter should be interpreted to exclude or to include this charge.

Bradbie would have us conclude that Mead changed her mind on the penalty after her decision letter dated January 10, 1980. The Government suggests it is simply an error in filling out the form. We rely instead on the presumption of administrative regularity to resolve this question.

On its face, the form is described as for use "in preparation of the decision notice" and the part of the form in question is to be completed prior to the issuance of the decision letter. After delivery of the decision letter to the employee, the form is completed by filling in other parts. Presumably this sequence was followed, as a matter of administrative regularity, here. There is, thus, no reason to conclude that Mead changed her mind *after* her decision of January 10, 1980 with respect to the penalty. Her testimony is entirely consistent with the penalty imposed.

The fact that she and Holmes, together and individually, may have considered other penalties prior to the final decision does not persuade us that the final decision was unreasonable. Rather, it indicates that the officials acted prudently and with care.

### Discrimination Allegation

■ Bradbie requests us to remand this case to the MSPB with instructions to reopen proceedings so that he may add allegations of discrimination to his case. We do not find such action appropriate.

During the hearing, Bradbie took the position that discrimination was not to be an issue in his appeal to the MSPB. Indeed, he specifically disclaimed it, as indicated by the following colloquy before the presiding officer:

MR. BRADBIE: Mr. Holmes, do you recall that after Mrs. Mead, the Director, read the list and stated that three of these new employees had been assigned to my unit, that I then commented that the Backlog Unit still remains an all-Black unit?

MR. HARRIS (for the agency): All right. Mr. Presiding Official, I think this is totally irrelevant, immaterial.

I didn't object to the question prior because I thought it was going to lead to something, but I object to this question.

PRESIDING OFFICIAL: Mr. Bradbie, in your appeal petition you did not raise any allegations of discrimination.

MR. BRADBIE: I am not now, sir.

PRESIDING OFFICIAL: Are you raising any allegations of discrimination now?

MR. BRADBIE: No. Not at this point.

PRESIDING OFFICIAL: Because that question would go towards—

MR. BRADBIE: If I may clarify, I am not leading towards a racial allegation. Specifically, what I am trying to get at is that, I suppose I have earned a reputation for being outspoken.

PRESIDING OFFICIAL: The problem is, if we allow this question it can be construed as an allegation of discrimination. So, if you do not wish to pursue discrimination, we ask you not to bring up this question.

If you wish to pursue an allegation of discrimination, could you please tell us.

MR. BRADBIE: No, not at this time.

PRESIDING OFFICIAL: So then the question pertains to race. Do you wish to pursue it, or wish to withdraw the question?

MR. BRADBIE: I will withdraw the question.

Nine months after the final decision by the MSPB, and after the appeal to the Court of Claims, Bradbie filed a motion to the MSPB to reopen proceedings so that he might add a charge of discrimination as a basis for the adverse action. The MSPB denied the motion.

Bradbie now asks this court to remand and *order* the MSPB to reopen proceedings, asserting that discrimination has been an issue in this proceeding since its inception and that the agency is responsible for its omission from the case. If Bradbie's charges were correct, a serious question would arise as to whether this case should have been treated by the MSPB as one under 5 U.S.C. § 7702, which could then fall outside the jurisdiction of this court. How-

ever, in view of the above-quoted record, we find no merit in Bradbie's assertions. Thus, we have before us a final decision which Bradbie properly appealed under 5 U.S.C. § 7703(b)(1). The request for remand is denied.

AFFIRMED.