**Joseph F. WILLIAMS, Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

**Appeal No. 72–82.**

United States Court of Appeals, Federal Circuit.

Sept. 6, 1983.

Robert E. Riley, of Chicago, Ill., for petitioner. With him on the brief was Gerald Goldman, Chicago, Ill.

Eileen P. Fennessy, Washington, D.C., for respondent. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Asst. Director, Washington, D.C.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, DAVIS, NICHOLS, BALDWIN, KASHIWA, BENNETT, MILLER, SMITH and NIES, Circuit Judges.

## OPINION AND ORDER

NIES, Circuit Judge.

This appeal is from a decision of the Merit Systems Protection Board (MSPB) dated August 4, 1982, affirming the action of the Department of the Army removing Joseph L. Williams, Sr., (petitioner) from his position as a Supervisory Staff Administrative Assistant in the 327th Military Police Battalion, Chicago, Illinois. *Williams v. Department of the Army*, MSPB Docket No. CH03518210087.

In the MSPB proceedings Williams attacked the action taken against him on the ground that it was not supportable on the merits and that a basis for his removal was race discrimination. Upon affirmance of the agency action by the MSPB, Williams pursued two avenues for review of the MSPB decision. By appeal to the United States Court of Claims (a predecessor of this court) pursuant to 5 U.S.C. § 7703(b)(1), Williams sought review on the record of the non-discrimination issues, and by a complaint in the United States District Court for the Northern District of Illinois, Eastern Division, under § 717(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c) (1976), he asked *de novo* review of the discrimination issues.

The Department of the Army has filed a motion to dismiss the instant appeal for lack of jurisdiction, asserting that the jurisdictional statutes do not allow bifurcation of an MSPB decision for purposes of review and that only the district court has jurisdiction.

Having reviewed the record of proceedings and the submissions of the parties in banc,[1] and finding a lack of jurisdiction to hear the appeal, we transfer the case to the

1. After consideration of this motion by a panel of the court, the court voted, *sua sponte,* for consideration of the matter in banc, requesting additional briefs and oral argument by the parties. The Bar Association of the District of Columbia participated as *amicus curiae.*

district court in which the discrimination suit is pending.

## I

The jurisdiction of the United States Court of Appeals for the Federal Circuit is set out in the Federal Courts Improvement Act of 1982, 28 U.S.C. § 1295, which provides:

(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

\* \* \* \* \* \*

(9) of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to section 7703(b)(1) ... of Title 5.

5 U.S.C. § 7703(b)(1), referred to therein, provides an employee aggrieved by a final order or decision of the MSPB with the following avenues of review:

Except as provided in paragraph (2) of this subsection [5 U.S.C. § 7703(b)(2)], a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit.[2] Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.

5 U.S.C. § 7703(b)(2) provides:

(2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any section

must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under section 7702.

■ Finally, we must consider § 7702, which defines the types of "cases of discrimination" which are excluded from the jurisdiction of this court, as follows:

(a)(1) ... the case of any employee or applicant for employment who—

(A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and

(B) alleges that a basis for the action was discrimination prohibited by—

(i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16),

(ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d))

(iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),

(iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or

(v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph.

Thus, a case under § 7702 must involve a specific type of action against an employee which may be appealed to the MSPB and an allegation in the nature of an affirmative defense that *a basis for the action* was discrimination within one of the categories above listed. Cases falling within § 7702 have been termed "mixed."[3]

■ An examination of petitioner's appeal to the MSPB discloses that the petition is founded upon a removal action appealable to the board under § 7701 and contains an allegation of prohibited racial discrimi-

---

**2.** This court was substituted as the specified appellate court in place of "the Court of Claims or a United States court of appeals" by the Federal Courts Improvement Act of 1982, Pub.L. 97–164, § 144, 96 Stat. 25, 45 (1982). The present appeal, timely filed in the Court of Claims, was transferred to this court pursuant to that Act.

**3.** "Mixed" must be understood as discrimination mixed with an appealable action. Under § 7702 an employee may challenge an adverse action on non-discrimination and discrimination grounds or solely on discrimination grounds. *See Christo v. MSPB,* 667 F.2d 882, 884 n. 1 (10th Cir.1981).

nation under the Civil Rights Act referenced in § 7702(a)(1)(B)(i). Thus, the case is one which falls squarely within § 7702.

 Taking the language of § 7703(b)(1) literally, one would conclude that the appeal in this case is clearly beyond our jurisdiction. However, our review of decisions of other circuit courts, which were faced with construing this statute prior to the lodging of exclusive jurisdiction of § 7703(b)(1) appeals in this court, indicates that the issue is not entirely without doubt. Nevertheless, these circuits each concluded that the statutory scheme as a whole indicates that Congress intended to authorize unitary, rather than bifurcated, review of an MSPB decision involving an adverse personnel action, and that the statutory provisions of § 7703(b)(1) must be given the meaning that appears on first reading. We agree. In reaching this decision we are mindful that the United States Court of Claims has, in two MSPB appeals, referred to the possible "severability" of discrimination claims. *Patterson v. United States,* No. 730–81C (Ct.Cl. Order entered April 27, 1982) (case dismissed and transferred to district court), and *Poppos v. Department of the Navy,* No. 81–81 (Order entered August 20, 1982) (MSPB's dismissal affirmed because agency's action was not an appealable adverse action). The results or decisions in those cases do not conflict with the result herein. To the extent that the analysis differs, this decision is controlling.[4]

### II

The Fifth Circuit decision in *Wiggins v. U.S. Postal Service,* 653 F.2d 219 (1981), appears to be the first to have considered the issue of whether bifurcation of an appeal from an MSPB decision in a mixed case was either permissible or required. The

court approached the problem by determining the scope of the jurisdiction of a *district court* in a "mixed" case, stating:

> Our analysis begins with the language of the statute. Section 7702 is not limited to individual *claims* of discrimination, but is instead extended to any "*case* of any employee ... who alleges that *a basis* for the action was discrimination ...." 5 U.S.C. § 7702(a)(1) (emphasis added). This language echoes descriptions found in the legislative history of the Act. The Senate Report, for example, refers to the district courts' jurisdiction over decisions and orders of the board "involving discrimination complaints." S.Rep. No. 95–969, *supra,* at 63. Thus, both the statute and its legislative history define jurisdiction in terms of "cases" which "involve discrimination," and not in terms of "discrimination claims;" this suggests that the Congress intended district court jurisdiction to extend to *all* claims in any case involving a charge of discrimination.

Indeed, this interpretation is consistent with the statute's treatment of mixed cases in previous stages of the process: section 7702 explicitly requires the Board in appealable cases alleging both discrimination and non-discrimination claims to decide *both* issues. 5 U.S.C. § 7702(a)(1)(B).

We recognize that the Congress sought as a general rule to vest jurisdiction of appeals from Board decisions not involving discrimination claims in the courts of appeals; as noted above, the Congress desired thereby to reduce the wide variations in decisions which resulted from appeals to district courts. However, this concern must be tempered with the fact that district court decisions in such cases are themselves appealable to the courts of

---

4. *Patterson* was a case comparable to this one where dual review was being pursued and the appeal was transferred by the Court of Claims to a district court. *Poppos* raised an issue of jurisdiction of the MSPB over a probationary employee's appeal. In that case, while racial and age discrimination were alleged, the case did not become a mixed case under § 7702 because it failed to pass the first criterion of

"an action which the employee ... may appeal to the board." Contrary to the dissent, a probationary employee has the burden to prove that his appeal is within the board's jurisdiction. 5 C.F.R. § 1201.56(a)(2). Were jurisdiction to rest on mere allegations, probationary employees would in all cases be able to secure as complete review as non-probationary employees.

appeals, and must be balanced against the tremendous waste of judicial resources that bifurcation of one case between district and circuit courts would inevitably entail. If an individual appeal from the Board were divided into separate discrimination and non-discrimination cases, the district and circuit courts each would be required initially to hear the case, and each would be forced to consider the case in the absence of some claims which may be dispositive. In the context of these concerns we are convinced that the statutory language should be read literally, that is, to vest initial jurisdiction in the district courts over any "case" in which an employee alleges discrimination as "a basis for the action."

*Id.* at 221–22. (Emphasis in original and footnotes omitted.)

At the time the *Wiggins* case was under submission, a similar appeal of the non-discrimination issues of a mixed case was before the Tenth Circuit in *Christo v. MSPB*, 667 F.2d 882 (10th Cir.1981). The *Christo* court held, in dismissing the appeal, that "jurisdiction in this matter is vested exclusively in the district court." *Id.* at 883. The court's analysis begins:

Research has uncovered no case law dealing with this question. However, the various statutory provisions of the Act and its legislative history indicate a clear Congressional preference for combining various aspects of a single agency determination under one review proceeding, both in the administrative and judicial channels.

*Id.*

A reading of § 7702 confirms this conclusion. Throughout § 7702, the issues of a mixed case are tied together for resolution at the same time. Section 7702(a)(2) requires an "agency" (i.e., not the MSPB) to decide "both the issue of discrimination and the appealable action" within 120 days and "the decision" is judicially reviewable or appealable to the board. Similarly, § 7702(a)(1)(B) requires the Board (i.e., the MSPB) also to decide all issues in the case within 120 days. Moreover, throughout

§ 7702, the word "decision" is used in referring to the administrative result of the proceeding in a mixed case, and the words "judicially reviewable *action*," again in the singular, is used concerning the review which may follow from *the* decision, whether the decision be that of an agency, the Board, the Equal Employment Opportunity Commission, or a special panel to which a matter may be certified. Having used "issue of discrimination" in § 7702(a)(1)(B) and again in § 7702(a)(2)(B), if that issue were to be severable from the rest of the case for purposes of judicial review, Congress could have easily provided for a decision on that "issue" to be the subject of a "judicially reviewable action." Congress did not so provide, and we find no sound reason to interpret "a decision" to mean "decisions" or to read "action" as "action and appeal."

In *Hayes v. United States Government Printing Office*, 684 F.2d 137, 140–41 (D.C. Cir.1982), the District of Columbia Circuit also undertook a thorough study of the problem of review of mixed cases, noting:

Every court of appeals considering the issue of appropriate disposition of mixed cases has concluded that, in the light of this language and legislative history, and of the policies involved as well, such cases must be treated as a unit and must go first to the district courts.[2]

\* \* \* \* \* \*

[I]n view of the language of the statute itself, the intent of the legislature, and the strong policies favoring initial district court review of mixed cases, we dismiss Hayes's petition for review. When the administrative procedure advances to fruition, Hayes may bring his entire mixed case before the district court for review.

---

[2] *Chang v. MSPB*, 677 F.2d 173 (1st Cir. 1982); *Christo v. MSPB*, 667 F.2d 882 (10th Cir.1981), *mandate recalled, dismissal vacated and petition transferred,* 667 F.2d 882, 885 (1982); *Wermers v. MSPB*, No. 80–7675 (9th Cir. Sept. 9, 1981); *Wiggins v. United States Postal Service*, 653 F.2d 219 (5th Cir.1981); *Von Minden v. Nuwes*, No. 80–7764 (9th Cir.

April 30, 1981), *cert. denied,* 454 U.S. 1032 [102 S.Ct. 569, 70 L.Ed.2d 475] (1981).

*Accord Vauls v. Veterans Administration,* 693 F.2d 232 (D.C.Cir.1982).

Thus, we are led to conclude for similar reasons that Congress did not direct or contemplate bifurcated review of any mixed case. Rather, § 7702 reflects the statement in the legislative history:

> In such cases, questions of the employee's inefficiency or misconduct, and discrimination by the employer, will be two sides of the same question and must be considered together.

S.Rep. No. 95–969, 95th Cong., 2d Sess. 53, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2775.

### III

We do not find anything in the Federal Courts Improvement Act or its legislative history which leads us to conclude that bifurcation of appeals is appropriate by virtue of the amendment of § 7703(b) and the grant of "exclusive" jurisdiction to this court in 28 U.S.C. § 1295(a)(9). The latter section in itself is not the basis of appellant's right but merely a grant of jurisdiction to the court if the appellant has such right. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1975).

To hold that "exclusive" in the preamble of § 1295(a) means exclusive of the *district court* would have no more validity with respect to subparagraph (9) than any other subparagraph in § 1295(a).[5] The language clearly operates to allocate jurisdiction *between circuits* as it does throughout the chapter (e.g., § 1292(c)).

### IV

Policy considerations also support unitary appeal rather than bifurcated treatment. From the standpoint of judicial economy,

consideration of all issues by a single tribunal is clearly preferable. As stated by the *Hayes* court, 684 F.2d at 140–41,

> Second, as the *Wiggins* court noted, to split the discrimination and nondiscrimination claims, which are closely related both logically and as a factual matter, would result in a tremendous waste of judicial resources while the district court and court of appeals twice consider the identical issues.[4]

---

[4] The difficulty involved in separating discrimination and nondiscrimination claims at the administrative level was brought to the attention of the Congress in a letter from the Comptroller General, which was reproduced in the House report on the CSRA:

> [a] clear distinction between an equal employment and merit principle complaint is difficult, if not impossible, and employees frequently perceive their problems to be both. We believe that placing the adjudication of these complaints in different organizations will invite duplicate or two track appeals on the same issues simultaneously, or sequentially, to EEOC and MSPB. In addition to wasting time, effort and money, this situation poses a very real potential for differing definitions of issues, inconsistent interpretations of laws, regulations and irreconcilable decisions.

H.R.Rep. No. 1403, 95th Cong., 2d Sess. 107 (1978).

The above considerations which led to consolidation at the administrative level apply equally to an appeal. Merely because separate findings are made by the MSPB on each issue does not mean that the issues are logically severable in reaching a conclusion on the propriety of an employee's removal. In a district court suit, the employee will charge that discrimination motivated the adverse action and the Government defense inevitably must include the merits of the administrative action to justify the action taken and negate discrimination. Petitioner has been removed only once and has proceeded through one administrative proceeding. It is well settled that a cause of

---

**5.** Section 1295(a)(4)(B) provides exclusive jurisdiction, inter alia, of appeals from the Trademark Trial and Appeal Board, which may, nevertheless, be reviewed alternatively by suit

in district court and appeal to a regional circuit. 15 U.S.C. § 1071 (1976) and 15 U.S.C. § 1121, as amended by the Federal Courts Improvement Act, *supra.*

action may not be split. *Cf. Everett Plywood Corp. v. United States,* 206 Ct.Cl. 244, 247, 512 F.2d 1082, 1087 (Ct.Cl.1975); *Alyeska Pipeline Service Co. v. United States,* 688 F.2d 765 (Ct.Cl.1982).

Finally, the interests of the litigant do not lead in the direction of bifurcation. While petitioner here seeks, indeed, urges an interpretation of the statute which would require dual routes of review, the expense and inconvenience of this procedure on private parties cannot be discounted. On the other hand, we do not believe that this decision will enable litigants to forum shop between district courts and this court by merely alleging discrimination. The district courts have ample authority to dismiss cases based on frivolous or sham discrimination claims. They need not transfer even legitimate merits issues where a litigant has made abusive use of the judicial system.

## V

We hold that where jurisdiction lies in the district court under 5 U.S.C. § 7703(b)(2), the entire action falls within the jurisdiction of that court and this court has no jurisdiction, under 5 U.S.C. § 7703(b)(1), over such cases. This holding is limited to situations in which the employee is challenging judicially the board's determinations of both the discrimination and the nondiscrimination issues. We express no view on whether we would have jurisdiction over cases in which the employee initially raised both issues before the board, but either abandoned the discrimination claim during the board proceeding or eschewed any judicial challenge of the board's ruling on that issue. Such a case is not before us. Petitioner here is actively pursuing review of all issues decided by the board.

Because the pleadings in the proceedings before the district court do not track the issues of this appeal in all respects, we find it in the interests of justice to transfer this case to the district court.

Accordingly, IT IS ORDERED THAT:

The case is transferred to the United States District Court for the Northern District of Illinois, Eastern Division.

NICHOLS, Circuit Judge, concurring.

After much hesitation, I have decided to join in the court's opinion. This court has no jurisdiction of an MSPB appeal in a "mixed" case *i.e.,* one where the appellant alleges, and will not waive, both prohibited racial, sex, or age discrimination, and other grounds of fact and law, all to attack the validity of one adverse agency action. I therefore join in the opinion. The case is even stronger than the opinion spells out insofar as the only possible way to a contrary result would be a theory that really a "mixed" case is not one case but two. Despite the general rule against splitting causes of action, there are or have been instances where causes of action have been split by necessity because complete and entire relief could not be obtained in one tribunal. One of these was Tucker Act (28 U.S.C. § 1491) suits where under the same operative facts a contractor wished to obtain both relief under the disputes clause of a contract, 41 U.S.C. §§ 321, 322, and reformation, recission, or breach damages. Another was in a "pay case" when an employee who claimed he had been illegally removed from a federal position had to go to the Court of Claims for back pay and to a district court for a reinstatement order. These two are now history. A third will arise under the Federal Courts Improvement Act. Pub.L. No. 97–164, if a disappointed bidder sues after award for bid preparation costs and injunctive relief. Doubtless other instances can be named by practitioners as they are sure to be common in view of the frequently baffling complexity of congressional allocation of jurisdiction among federal tribunals.

I think the Court of Claims thought this category of artificially bifurcated claims included the "mixed case" such as here, and so perhaps it did under prior law before the day of the MSPB, *Samuel D.L.T. Williams v. United States,* 216 Ct.Cl. 449 (1978).

Such a view is not tenable under the Civil Service Reform Act because the provisions

of 5 U.S.C. § 7702 reflect clearly a congressional understanding that a "mixed case" is still one case, not two. By 5 U.S.C. § 7702(b)(1), the employee may ask the EEOC to review a board decision. EEOC may hold, by (b)(3), that the board is in error in its interpretation of any law relating to discrimination. But the board by (c) then may find the EEOC in wrong under any civil service law, rule, regulation, etc., other than relating to discrimination, or is not supported by the evidence. Thus clearly in a "mixed case" the EEOC is to consider and decide all the issues at the outset. If the two cannot agree, the case goes to a "special panel" on which both are represented, which is to make the final administrative decision. It is clear that up to this point all the legal issues in a "mixed case" are brought together, considered and applied, which will include matters within both the EEOC and the board expertise, obviously very different matters. When the case is finally ripe for judicial review, it will be a melded product of the expertise of both the EEOC and of the board to the full extent that their respective expertise is relevant. It is as unreasonable as it is contrary to the statutory language to suppose that after so much effort to make two cases one, they should be parted again at the judicial review level.

In the general consent to and approval of judicial review of agency action, 5 U.S.C. § 702, it is expressly spelled out that nothing therein "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." If 5 U.S.C. § 7703 does not expressly reject the separation of discrimination and nondiscrimination issues in the same appeal, it does so by implication.

As the author of *Poppos v. Department of the Navy*, Appeal No. 81–81 (Ct.Cl. Aug. 20, 1982, to be reported), I now think we were too much influenced by practice before the Civil Service Reform Act. We continued with the habit of freely bifurcating mixed cases, failing to note that the statutes had changed. Possibly we could have exercised the jurisdiction we did in *Poppos* on other grounds, namely, that the MSPB too had no jurisdiction of the discrimination allegations Mr. Poppos had made, and therefore we had no discrimination claim properly before us to review. The fact remains we predicated our decision on severability. If we had jurisdiction on grounds other than those we relied on, perhaps that suffices to make our holding valid and *res judicata* still.

Let's face it, in the eyes of Congress the district and regional circuit courts have expertise on everything under the sun, while we have expertise only on selected tiresome technical matters not involving gut issues such as discrimination. For this let us be grateful, as we have more than enough to do in the areas exclusively confided to us. If we yearn to participate in other litigation, we need only solicit assignments as visiting judges. As for the appellant, we may shed a tear for him as he joins the club, a large one, of those who have incurred frustration, loss of time, and added cost, by mistaking their way in the complex maze of federal court jurisdiction. Of the club members those who do not suffer entire loss of once valid causes of action are the lucky ones. *Buck Kreihs Co. v. United States,* 192 Ct.Cl. 297, 427 F.2d 770 (Ct.Cl. 1970) illustrates the perplexity incident to deciding whether a contract to refit mothballed ships can be sued on exclusively under the Tucker Act, 28 U.S.C. § 1491, or exclusively under the Suits in Admiralty Act, 46 U.S.C. § 742, with 6 and 2 years statutes of limitation respectively.

I do not think the dissent is correct in fearing that the majority decision restores the nonuniformity of interpretation of United States Civil Service laws supposed to have obtained before the FCIA. It is obvious the Congress intended this court to be, below the Supreme Court, the controlling authority on interpretation of the Civil Service laws. Such an intent can be effec-

tuated although other sets of courts exercise concurrent jurisdiction, if one court will give proper deference to the decisions of another entitled to such deference. Such a situation exists with respect to the "diversity" jurisdiction of federal courts over state law controversies, as to which the highest state court ought to be allowed and is allowed the deciding voice as to the meaning of state law. Whatever may be the evils of "diversity" jurisdiction, one of them does not seem to be introduction of nonuniformity into state law. This is so because federal courts give proper deference to state decisions and so the other federal courts should, and I expect will, give proper deference to ours when they adjudicate "mixed" cases. It may be the best solution would be to persuade Congress that we can be trusted not to commit mayhem upon the antidiscrimination laws, but this may be a long time coming, and meanwhile, the heavens will not fall.

BENNETT, Circuit Judge, with whom DAVIS and KASHIWA, Circuit Judges, join, dissenting.

I respectfully dissent from the majority's holding that this court does not have jurisdiction where an employee makes a judicial challenge to both the MSPB's determinations on discrimination and nondiscrimination issues, but presents only the latter here and the former to the district court.

I

As an initial matter, I believe that when this court, *in banc,* overrules one of our precedents, pursuant to our decision in *South Corp. v. United States,* 690 F.2d 1368, 1370–71 (Fed.Cir.1982), we should come straight out and say so. The majority, however, states that *Patterson v. United States,* Ct.Cl. No. 730–81C (order entered Apr. 27, 1982), and *Poppos v. Department of the Navy,* App. No. 81–81 (order entered Aug. 20, 1982), "do not conflict with the result herein. To the extent that the analysis differs, this decision is controlling." In my view, the conflict could not be clearer.

In *Patterson,* the Court of Claims stated:

the claim is of sex discrimination, and if there are other issues mixed in, *they are not of the variety that lend themselves to severance and separate consideration.* It follows that we do not have jurisdiction of the case. [Emphasis added.]

As the majority points out, the court did indeed transfer that case to the district court but it was because the issues in that case were so intertwined that they could not be severed.

In *Poppos,* the Court of Claims stated:

When we find in an appeal from the MSPB a mixture of race, sex, or age considerations, and others normal to our jurisdiction, we can if we deem them inseverable, lump them all together and treat the case as excluded from our jurisdiction entirely. *Patterson v. United States,* Ct.Cl. No. 730–81C (order entered April 27, 1982). If we deem them severable, however, to do this would be to avoid the responsibility Congress has assigned to us. Here they are severable. The best evidence of this is that petitioner treats them himself as severable. He already has or has had litigation pending in other courts relating to the race and age aspects of his grievance.

*Poppos,* then, contains a clear statement that "mixed" cases may be severed in appropriate circumstances, a position the majority rejects out of hand. The majority implies that *Poppos* was not a "mixed" case (under section 7702) at all, "because it failed to pass the first criterion of 'an action which the employee . . . may appeal to the board.'" In *Poppos,* the petitioner, a probationary employee, argued before the MSPB that he was removed because of (1) partisan political reasons, and (2) race and age discrimination. The court affirmed the MSPB's decision that petitioner was not terminated for partisan political reasons, and dismissed the discrimination claims for lack of jurisdiction. Unless the majority is subtly writing new law, it is my understanding that a probationary employee may appeal to the board if partisan political

reasons are alleged. *See* 5 C.F.R. § 315.-806(b) (1982); *see also Mastriano v. Federal Aviation Administration,* 714 F.2d 1152 (Fed.Cir.1983); *Piskadlo v. Veterans' Administration,* 668 F.2d 82, 84 (1st Cir.1982). In short, the distinction between a "mixed case under § 7702," as defined by the majority, and the facts of the *Poppos* case, escapes me.

## II

Turning to the statute, I disagree with the majority's assertion that section 7703(b)(1), read literally, "clearly" indicates that the present appeal is beyond our jurisdiction. In brief, the statutory scheme is as follows: (1) under 28 U.S.C. § 1295(a)(9), this court has exclusive jurisdiction over appeals brought pursuant to 5 U.S.C. § 7703(b)(1); (2) section 7703(b)(1) covers all appeals from the MSPB "[e]xcept as provided in [§ 7703(b)(2)]"; (3) section 7703(b)(2) provides for "*[c]ases of discrimination* subject to the provisions of section 7702" (emphasis added); and (4) section 7702(a)(1) covers cases where an employee or applicant who—

> (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and

> (B) alleges that a basis for the action was discrimination ...

From the foregoing, the majority concludes that *all* cases falling within section 7702 are "mixed"—defined to mean discrimination mixed with an appealable action.

My interpretation of section 7702(a)(1) differs from that of the majority. Section 7702(a)(1)(A) merely states the obvious: the MSPB only has jurisdiction over appeals involving discrimination allegations where an action would otherwise be within the board's jurisdiction. Without the language in section 7702(a)(1)(A), a literal reading of this section would permit the MSPB to hear discrimination cases brought for any reason, not just adverse actions, unacceptable performance, etc. Thus, section 7702(a)(1)(A) establishes that the board's jurisdiction over discrimination claims should be read within the context of the rest of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111.

The majority, however, reads section 7702(a)(1) to cover all "mixed" cases—a task made simple by defining "mixed" cases as those cases described in section 7702. I would suggest a less self-serving definition of a "mixed" case—i.e., one in which there are discrimination and nondiscrimination (civil service) claims raised by the petitioner on appeal from an agency's actions. Section 7702 simply requires that a discrimination claim involve an *action* within the board's jurisdiction, not that civil service claims also be raised by the petitioner.[1]

Great emphasis is placed on the phrase in section 7702(a)(1)(B) "*a basis for the action was discrimination ....*" (Emphasis added.) Similarly, the majority emphasizes that section 7702 employs the words "decision," not "decisions," and "action," not "action and appeal." The use of the above language in section 7702 does not, however, illuminate the issue before us. It is uncontested that Congress envisioned that the MSPB render a single decision in a "mixed" case, and this concern is found in the legislative history. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 53, *reprinted in* 1978 U.S. Code Cong. & Ad.News 2723, 2775. There is no indication, however, that Congress contemplated the issue of severed judicial

---

1. For example, a petitioner may claim that his removal was prompted by discriminatory motives, but does not assert that the stated reasons for the removal were unsupported by substantial evidence. Alternatively, a petitioner may claim that the penalty imposed, although authorized, was only being applied to members of his or her race *in similar circumstances.* These examples are meant to describe a "pure" discrimination claim covered by section 7702 that does not involve an interpretation of civil service law. Even if a question of substantial evidence presents itself, a court would seldom find it necessary to do more than resolve factual disputes.

appeals, either through the language of the statute *or* in the legislative history. All the quoted language from the legislative history in the majority opinion is in reference to the issue of bifurcation *on the administrative level,* not on judicial appeal.

Accordingly, I interpret section 7703(b)(1) as granting this court exclusive jurisdiction over all "mixed" appeals from the MSPB where the civil service claims may be or have been rationally severed from the discrimination claims.[2]

### III

Throughout the appeals process, discrimination claims are, in effect, "severed" from the nondiscrimination claims. Under section 7702(b)(3), the Equal Employment Opportunity Commission (EEOC) is empowered to review the MSPB's interpretation of antidiscrimination laws. The MSPB, by the same token, reviews the EEOC's decision as it relates to an interpretation of civil service law. Section 7702(c)(2). Thus, Congress evinced its concern that each administrative body be given due deference within areas of its expertise. *See* S.Rep. No. 969 at 57–60, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2779–82. Also, as a practical matter, an MSPB decision in a "mixed" case contains separate discussions of the discrim-

ination and civil service claims. Finally, the district court functionally severs a discrimination claim from a civil service claim, as the discrimination claim is subject to a trial de novo, while review of the civil service claim is limited to an examination of the evidence of record. *See Hayes v. United States Government Printing Office,* 684 F.2d 137, 141 (D.C.Cir.1982).[3]

I would certainly acknowledge that in some "mixed" cases the discrimination and civil service claims are inextricably intertwined and, therefore, an unnecessary duplication of effort would result if we were to assert jurisdiction. It does not follow, however, that because in *some* cases the "mixed" issues cannot be rationally severed, that in *all* "mixed" cases our review of the civil service claims will result in judicial waste. The inflexible jurisdictional rule adopted by the majority may operate as a rule of convenience, but it will not further the responsibilities assigned to this court by Congress.

### IV

None of the regional courts of appeals decisions cited by the majority, denying severance, deal with the issue before us in this case. In all of the cases cited, the petitioner was pursuing a discrimination claim in a

2. The MSPB sustained the agency's discharge of Mr. Williams, as supported by a preponderance of the evidence, for three reasons: (1) failure to report for two agency-directed, fitness-for-duty examinations, (2) absence without leave from July 20 until August 8, 1981, (3) failure to observe oral orders to complete four specific tasks. As to his affirmative defense of racial discrimination, the board found that it had not been established. Also, the MSPB found that the authorized penalty applied was appropriate to the misconduct, and that removal was for such cause as to promote the efficiency of the service.

3. In *Walker v. Washington,* 627 F.2d 541, 544 (D.C.Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 292 (1980), the court discussed the standard of review of district court decisions involving the discharge of federal employees. The court stated:

"Moreover, no special deference is paid to the decision of the District Court. Instead, this Court is to review the [administrative] record and determine anew if the agency committed procedural or substantive error, or if the agency action was arbitrary or capricious." [Footnote omitted) (citation omitted).]

Although *Walker* was a pre-Civil Service Reform Act case, 627 F.2d at 544 n. 4, there is no indication that a regional court of appeals would give any more deference to a district court's decision involving an application of civil service law, as the district court would be confined to a review of the administrative record. Thus, a regional court of appeals review of a district court decision in a "mixed" case will often result in an interpretation of civil service law by the appellate court—precisely the situation that existed *before* the enactment of the Federal Courts Improvement Act of 1982 and which that Act sought to end by vesting "exclusive jurisdiction" in the Federal Circuit.

district court and a nondiscrimination claim in the regional circuit court. The holding in those cases merely resulted in a *delay* of jurisdiction for the regional circuit court, as an appeal from the district court on both claims would eventually go to the same regional circuit court. It is certainly understandable that the regional circuit courts would not wish to undertake piecemeal review of a "mixed" case. By contrast, a "mixed" case transferred from this court to a district court would not, presumably, be subject to later review by this court.[4] This fact is particularly significant in view of the grant of exclusive jurisdiction to this court under section 7703(b)(1), *amended by* the Federal Courts Improvement Act of 1982 (FCIA), Pub.L. No. 97–164, § 144, 96 Stat. 25, 45 (1982) (discussed *infra*). None of the regional circuit court decisions discussing severability dealt with the implications of this "exclusive" grant, as all the cases cited appear to have been brought before the effective date of the FCIA.

### V

Prior to the grant to this court in 1982, by 28 U.S.C. § 1295(a)(9), of exclusive jurisdiction over appeals arising under section 7703(b)(1), petitioners were given the choice of appealing to the Court of Claims or the regional courts of appeals. The legislative history of the FCIA explains why Congress decided to grant to this court exclusive jurisdiction over certain classes of cases, including appeals from the MSPB.

Contemporary observers recognize that there are certain areas of Federal law in which the appellate system is malfunctioning. A decision in any one of the twelve regional circuits is not binding on any of the others. As a result, our Federal judicial system lacks the capacity, short of the Supreme Court, to provide reasonably quick and definitive answers to legal questions of nationwide signifi-

cance. The Supreme Court now appears to be operating at—or close to—full capacity; therefore, in the future the Court cannot be expected to provide much more guidance in legal issues than it now does. Yet the number and complexity of unsettled controversies in the law continues to grow.

Consequently, there are areas of the law in which the appellate courts reach inconsistent decisions on the same issue, or in which—although the rule of law may be fairly clear—courts apply the law unevenly when faced with the facts of individual cases. The difficulty here is structural. Since the Supreme Court's capacity to review cases cannot be enlarged significantly, the remedy lies in some reorganization at the intermediate appellate level. . . .

The creation of a new Court of Appeals for the Federal Circuit through a merger of the Court of Claims and the Court of Customs and Patent Appeals (CCPA) addresses these structural problems. The Act provides a new forum for the *definitive adjudication of selected categories of cases.* At the same time, it improves the administration of the system by reducing the number of decision-making entities within the federal appellate system.

Testimony on the Federal Courts Improvements Act supported the premise that the capacity of the federal appellate courts to provide a nationwide answer to legal questions could be expanded through the establishment of new courts of appeals whose jurisdiction is defined on a topical rather than a geographical basis. The creation of the Court of Appeals for the Federal Circuit provides such a forum for appeals from throughout the country *in areas of the law where Congress determines that there is special need for national uniformity.* [S.Rep. No. 275, 97th Cong., 2d Sess. 3–4, *reprint-*

---

**4.** I find no support for the amicus curiae's assertion that an appeal from the district court

would go to this court.

*ed in* 1982 U.S.Code Cong. & Ad.News 11, 13–14 (emphasis added) (footnotes omitted).]

Thus, Congress has indicated its intention that this court provide for "the definitive adjudication" of cases involving civil service law, and therefore answer the "special need for national uniformity" in this area of law. The majority's opinion today robs this goal of any serious practical effect and attributes to Congress an act at variance with its stated purpose.

There is no doubt that a significant percentage of appeals from the MSPB involve allegations of discrimination. The majority's holding will strip this court of jurisdiction in those cases in which a discrimination claim is appealed to the district court.[5] As a consequence, the district court will often be deciding issues of civil service law, with appellate review occurring in the regional courts of appeals. In many instances, the discrimination claim will be rejected and the district courts (and the regional courts of appeals) will have to decide purely non-discrimination issues of the very type over which this court has been given exclusive jurisdiction. For all of these cases, the majority's decision will render Congress' grant of exclusive jurisdiction to this court a nullity. Through a feat of radical judicial surgery, the majority, in less than a year's time, has seriously circumvented this court's jurisdiction in contravention of the explicit intent of Congress and restores to the adjudication of civilian personnel cases the confusion the Federal Courts Improvement Act of 1982 sought to avoid. I therefore would deny respondent's motion to dismiss or, in the alternative, to transfer the case to the district court.

**5.** The majority's holding is, of course, limited to the facts of the case before us. Thus, this decision only applies to cases where an appeal has been taken to the district court and that court has assumed jurisdiction. The holding in this case, therefore, does not address the issue of this court's jurisdiction where the discrimination claim has either been abandoned on the administrative level or has not been appealed to the district court. In fact, the government,

in its supplemental brief filed in this case, expressly states that this court would have jurisdiction to review an adverse action where the employee does not file a timely complaint in the district court on the discrimination allegation, "because the case would no longer be a mixed case—that is, one which alleged that a basis for the adverse action was discrimination."