John J. RENO, Petitioner,

v.

UNITED STATES POSTAL SERVICE, Respondent.

No. 04–3075.

United States Court of Appeals, Federal Circuit.

DECIDED: July 12, 2004.

John J. Reno, of Counsel, Las Vegas, NV, pro se.

Stephen D. Lobaugh, Principal Attorney, Robert E. Kirschman, Jr., David M. Cohen, Virginia G. Farrier, of Counsel, Department of Justice, Washington, DC, for Respondent.

Before MICHEL, LOURIE, and RADER, Circuit Judges.

PER CURIAM.

John J. Reno appeals a decision of the Merit Systems Protection Board affirming Reno's removal from his position as a mail handler with the United States Postal Service ("USPS"). *Reno v. United States Postal Serv.*, Docket No. SE–0752–03–0240–I–1 (M.S.P.B. Sept. 26, 2003). We *affirm.*

## BACKGROUND

The following facts are uncontested:

On December 2, 2000, the USPS hired Reno as a Part–Time Flexible Mail Handler at the USPS's Processing and Distribution Center in Honolulu, Hawaii. Two months later, on February 3, 2001, Reno suffered an injury to his left shoulder as he grabbed some boxes that were stuck on a conveyor belt at the USPS facility. He applied for workers' compensation for a left shoulder strain, and the Office of Workers' Compensation Program accepted Reno's claim. Reno received compensation for wage loss beginning on March 21, 2001.

In March 2002, USPS Human Resources Specialist Mary Ann Quinn sent a letter to Reno informing him that the USPS lacked a current medical report on him and that he was required to provide a periodic medical update. Quinn also told Reno that "[f]ederally injured employees are obligated to work when no longer totally disabled" and that "[t]he U.S. Postal Service can accommodate any medical restrictions your physician has while providing you with gainful employment even with the most minimal physical exertion." Reno did not provide the requested medical update.

Concerned that Reno was concealing the fact that he had recovered from his shoulder injury, Quinn initiated a Postal Inspector investigation of Reno. The investigation revealed that while Reno had continued receiving workers' compensation, Reno had sought employment as an Immigration Inspector with the Immigration and Naturalization Service (in June 2001) and as a federal Air Marshal (in November 2001). Both positions required physical abilities beyond those necessary to work at the USPS, and Reno claimed a high degree of physical fitness on his applications for the positions. During his required physical examination for the Immigration Inspector position, Reno completed 46 push-ups in one minute, and the physician's report indicated that Reno had normal strength and range of motion in his upper extremities. The Postal Inspectors also took video footage of Reno at an airport in May 2002, video that showed Reno using both arms to handle large suitcases, a duffel

bag, and a brief case, with no visible signs of discomfort.

In August 2002, the Office of Workers' Compensation ordered Reno to take a physical examination with an orthopedic and arthroscopic surgeon, Dr. D. Barry Lotman. The surgeon concluded that Reno's shoulder strain was "completely resolved" and that Reno was exhibiting "[s]ymptom magnification/malingering." On October 23, 2002, the Office of Workers' Compensation terminated Reno's benefits based on Dr. Lotman's examination and the results of the Postal Inspector investigation.

On February 17, 2003, Reno's USPS supervisor, Arnold Fines, proposed Reno's removal based on a charge of "failure to inform your supervisor or the Department of Labor-[Office of Workers' Compensation] of your medical recovery sufficient to perform light duty work." Glen Sakagawa, the deciding official, decided to remove Reno effective March 24, 2003.

Reno appealed to the Merit Systems Protection Board ("MSPB"). The administrative judge held a hearing with live witnesses—including Reno and the Postal Inspector assigned to investigate Reno— and received documentary and video evidence. The administrative judge found that Reno "lacked candor and [wa]s not credible" and that his "testimony [wa]s neither reliable nor trustworthy." Slip op. at 6. The administrative judge concluded that

> the evidence shows that the appellant had recovered from his injury and he was medically able to perform light duty. Despite being notified to do so, the appellant did not inform his supervisor or the Department of Labor of his medical recovery sufficient to perform light duty work. Therefore, based on the evidence presented, I find the agency has proven the charge by a prepon-

derance of the evidence. Thus, the charge is sustained.

*Id.* The administrative judge also determined that Reno's removal promoted the efficiency of the service, and that the penalty of removal was justified. The administrative judge rejected Reno's affirmative defenses of national-origin discrimination and disability discrimination.

Reno did not seek review of the administrative judge's Initial Decision before the full MSPB, and thus the Initial Decision became the Final Decision of the MSPB. Reno timely appealed to our court.

## DISCUSSION

Reno contends that the MSPB erred on the facts with respect to "disability discrimination [and] retaliation, wrongful termination" and erred on the law with respect to "retaliation [and] discrimination." Thus, Reno seeks review of, *inter alia,* his disability-discrimination affirmative defense.

Under 28 U.S.C. § 1295(a)(9), our court has exclusive jurisdiction over any "appeal from a final order or final decision of the Merit Systems Protection Board pursuant to sections 7703(b)(1) and 7703(d) of title 5." This grant of jurisdiction does not embrace MSPB appeals that include assertions of error with respect to discrimination issues. *See generally Williams v. Dep't of the Army,* 715 F.2d 1485, 1491 (Fed.Cir.1983) (*en banc*) (holding that Federal Circuit lacks jurisdiction over "mixed" cases "in which the employee is challenging judicially the board's determinations of both the discrimination and the nondiscrimination issues"). But our court does have jurisdiction where the appealed claim of discrimination is frivolous. *Hill v. Dep't of the Air Force,* 796 F.2d 1469, 1470–71 (Fed.Cir.1986).

Here, Reno appeals the MSPB's rejection of his disability-discrimination affirmative defense; he apparently does not appeal the MSPB's rejection of his national-origin-discrimination affirmative defense. Reno's disability-discrimination defense is frivolous: As the MSPB properly determined, Reno did "not show[ ] that he meets the definition of a 'qualified individual with a disability' . . . [and] [t]herefore, [Reno] failed to establish a prima facie case of disability discrimination." Slip op. at 8. *See also Hill,* 796 F.2d at 1471 (holding that the MSPB "correctly held that [petitioner] had not raised a nonfrivolous allegation of discrimination" where petitioner "alleged no set of facts which, if proven, would comprise even a minimum *prima facie* case of age discrimination"). We therefore have jurisdiction over this appeal.

On the merits, Reno does not show any reversible error. Reno fails to support his terse and conclusory allegations of error with any references to specific findings of fact or conclusions of law that Reno believes to be erroneous. Moreover, our review of the MSPB's opinion does not reveal any reason to question the factual findings or conclusions of law—to the contrary, the factual findings appear well-supported, and the legal analysis sound. We thus affirm.