NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JERRY WHITE,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2010-3057

---

Petition for review of the Merit Systems Protection Board in Case No. CH0752080426-I-2.

---

Decided: June 14, 2010

---

JERRY WHITE, of Bolingbrook, Illinois, pro se.

EUGENIA IZMAYLOVA, Attorney, Civil Practice Section, United States Postal Service, Law Department, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, and LORI DYM, Chief Counsel, Law Department, Office of Labor Law, United

States Postal Service, of Washington, DC. Of counsel was SCOTT A. MACGRIFF, Trial Attorney.

---

Before RADER, *Chief Judge*, PLAGER and LOURIE, *Circuit Judges*.

PER CURIAM.

Petitioner Jerry White ("White") appeals from the final order of the Merit Systems Protection Board ("the Board") upholding his removal for eight separate incidents of accepting pay for time not worked. We affirm.

## BACKGROUND

White was employed by the United States Postal Service from December 11, 1993, until his removal on February 26, 2008. White was promoted to supervisor in 1998 and in 1999 to Manager of the Computer Forwarding System ("CFS") unit within the South Suburban Processing and Distribution Center ("South Suburban P&DC") in Bedford Park, Illinois. In mid-2006, the Postal Service's Office of the Inspector General ("OIG") commenced an investigation into allegations that employees at the South Suburban P&DC were entering inaccurate information into the Postal Service's Time and Attendance Collection System ("TACS"). A review of time records from January through June 2006 led OIG to further investigate three CFS unit supervisors, including White, who had received an inordinate amount of overtime compensation due to TACS entries in excess of their daily authorized eight-hour schedule.

From August 19 to November 3, 2006, OIG agents tracked White's arrival and departure times from the CFS

unit.  On eight separate days in September 2006, White was absent from the CFS unit for long periods of time while still on the clock.  For example, on September 21, 2006, White accepted compensation for working approximately ten hours based on TACS recording an arrival time of 11:58 a.m. and a departure time of 10:31 p.m.  The surveillance records, however, show that White left the CFS unit at around 2:31 p.m. and that he did not return until 6:41 p.m.  Consequently, White was away from the unit while being paid for four hours and ten minutes.  Similar paid absences of between three to five hours occurred on September 22, 24, 25, 26, 27, 28, and 29.

On February 9, 2007, OIG Special Agent Ramona Parker prepared a Report of Investigation, which found, *inter alia*, that White had misappropriated Postal funds through the misuse of the TACS.  The Report concluded that White had been paid $7,557.64 for 251.51 extra hours between August 19 and November 3, 2006, and on forty-three occasions during that period, including the eight specific dates in September listed above, White had been paid for time when he was out of the CFS unit for between two to six hours.  The OIG Report was sent to Patrick Kavanaugh, White's supervisor, who conducted a pre-disciplinary interview with White on March 2, 2007.  When questioned about his whereabouts on the eight specific September 2006 dates, White could not offer any explanation.  White requested access to his office to see if his personal notes could help him recall.  Yet, when given the opportunity to obtain his notes on April 3, 2007, White failed to produce any information indicating his whereabouts.  White then requested access to his e-mails but was told that OIG had confiscated his computer.

On September 6, 2007, Kavanaugh issued White a Notice of Proposed Removal, charging him with accepting

pay for time not worked. The charge was supported by eight specifications corresponding to the eight September dates, and it identified specific sections of the Supervisor's Guide to Scheduling and Premium Pay and the Postal Service's Employee and Labor Relations Manual that White had violated. The Notice also informed White of his right to meet with Lolita Rice, the Manager of Post Office Operations and deciding officer, or to respond to the charge in writing.

On February 22, 2008, Rice issued a Letter of Decision upholding the charge and the penalty of removal. Rice explained that the evidence showed that White was in fact absent from the CFS unit during the dates and times alleged in the Notice of Proposed Removal and that when given an opportunity to explain his whereabouts, White produced no evidence that showed he was working. As for the penalty, Rice concluded that given White's disregard for the Postal Service's rules and regulations, White's misguided attempts to rationalize his actions, and his unwillingness to recognize his wrongdoing, she had no trust in White as an employee and that removal would promote the efficiency of the service. In reaching this conclusion, Rice relied on the seriousness of the offense, White's position as a manager with duties to enforce the same policies he had violated, his lack of remorse, and his refusal to accept any kind of responsibility for his actions. Rice also considered White's prior fifteen years with the Postal Service with no past disciplinary history but determined removal was still the appropriate penalty. Accordingly, Rice upheld White's removal effective February 26, 2008.

White appealed his removal to the Board. After discovery, the administrative judge ("AJ"), without apparent objection from either party, accepted into evidence all

documents submitted by the parties and permitted White to call five of his ten proposed witnesses. The AJ conducted a hearing on July 30, 2009.

On August 3, 2009, the AJ issued an Initial Decision affirming the agency's removal of White for accepting compensation for time not worked. The AJ, noting that White did not dispute his absences, credited Special Agent Parker's testimony regarding White's absences from the unit as supported by documentary evidence. The AJ then rejected as not credible White's main defense, that he was interviewing applicants for temporary employment or for the Postal Service's Postal Automation Redirection System ("PARS") program. Rather, the AJ credited the testimony of Kavanaugh and Rice, who stated that White was not authorized to hire temporary employees in September 2006; the testimony of White's witness Bob Erxleben, a Customer Service Analyst, who testified that the PARS program was not run by CFS; and the testimony of Steven Schneider, White's then supervisor, who testified that White had no reason to leave the CFS unit to do any PARS-related work. The AJ also relied on White's inability to name any applicants that he interviewed or to produce any application forms.

The AJ also rejected White's contention that if he had been allowed to review his e-mail messages he may have been able to remember what he had been doing on the dates in question. The AJ found that White had not indicated what types of e-mails would help him explain his absences and, given the significant length of his absences, White likely would have remembered what he was doing without reviewing any e-mail messages.

Having found by the preponderance of the evidence that White accepted pay for time not worked, the AJ then

reviewed the agency's penalty of removal. The AJ relied on Rice's testimony that White's misconduct was serious in nature, that she could no longer trust White, and that he refused to take responsibility for his conduct. The AJ also relied on evidence that White's misconduct was notorious in nature, citing a letter addressed to Rice and seven other individuals from "CFS Clerks" dated October 26, 2006, complaining that White left work several hours each day. The AJ concluded that Rice had reasonably weighed the pertinent factors in reaching her decision to remove White, including taking into account White's years of employment with no past disciplinary history, and thus affirmed the agency's choice of penalty.

On October 27, 2009, the full Board denied White's Petition for Review, making the AJ's decision the final decision of the Board. White appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).

DISCUSSION

We must affirm a Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

In his informal brief, White argues for the first time that the Postal Service intentionally discriminated against him based on his race and gender. Specifically, White alleges that the agency punished him—a black male—more harshly for the same conduct than another individual who is white and female. White asserts that he did not become aware of the discrimination until July

20, 2009, a day prior to the Board proceedings, and thus too late to include in his original complaint.

This claim cannot be brought in the court for two reasons. First, this court does not have jurisdiction over discrimination claims under § 7703(b)(1), even in "mixed cases." *Williams v. Dep't of the Army*, 715 F.2d 1485, 1491 (Fed. Cir. 1983) (*en banc*). Second, White failed to raise his discrimination claim before the Board, and "[o]ur precedent clearly establishes the impropriety of seeking a reversal of the board's decision on the basis of assertions never presented to the presiding official or to the board." *Oshiver v. Office of Personnel Mgmt.*, 896 F.2d 540, 542 (Fed. Cir. 1990) (quoting *Rockwell v. Dep't of Transp.*, 789 F.2d 908, 913 (Fed. Cir. 1986)).

White does, however, include at Tab C of his petition a section titled "Informal Brief" in which he advances several arguments, also for the first time, related to those addressed by the Board. In light of White's *pro se* status, we will consider the arguments White raises in this section on appeal. White first argues that the evidence does not support the Board's finding that White engaged in the charged conduct. Specifically, White asserts that the Board erred in assuming that when he was absent from the CFS unit he was out of the building and not working rather than meeting with other supervisors on the second floor or with new hires and interviewees on the workroom floor. According to White, Rice and Kavanaugh lied when they testified that White did not have authority to hire temporary employees in September 2006 and Schneider failed to appreciate that the PARS program required him to attend meetings outside the CFS unit between the hours of 9:00 a.m. and 5:00 p.m. Finally, White asserts that he would have been able to account for

his absences from the CFS unit if he had been permitted to review his e-mail messages on his work computer.

The government responds that substantial evidence supports the Board's finding that White engaged in the charge of accepting pay for time not worked.  We agree. White does not dispute that he was away from the CFS unit on the dates and at the times charged.  Rather he argues that the Board erred in not believing his excuses for being away from the unit—mainly interviewing applicants and attending PARS meetings—over the testimony of multiple witnesses that White was not authorized to hire temporary employees and that, to the extent that the CFS unit was involved in PARS, there was no need for White to leave the unit to participate.  White points to no documentary evidence (including possible work-related e-mails) that corroborate his version of events or his assertions that other witnesses were being untruthful.  We first note that White failed to provide this court with a transcript of the testimony on which he relies.  *See* Fed. R. App. R. 10(b) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion.").  But more importantly, the Board's decision rests in substantial part on credibility determinations, and as an appellate court, we cannot re-evaluate credibility determinations when, as here, they are not inherently improbable or discredited by undisputed fact.  *Pope v. United States Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997).

White also appears to challenge the Board's affirmance of the penalty of removal, which White suggests was too harsh.  He argues that Rice, as his supervisor, should have evaluated his performance daily and should

have indicated to him any problems in his job performance.

The government responds that the Board did not abuse its discretion in sustaining White's removal, arguing that it strains credibility that given White's status as a manager he needed to be told on a daily basis to actually be at work and perform his assigned duties. The government also contends that White offers no authority to support any contention that he should have been given progressive discipline and that this court has repeatedly upheld a penalty of removal for analogous conduct.

Again we agree with the government that the Board did not err in upholding the agency's penalty of removal. The choice of penalty is committed to the sound discretion of the employing agency; it will not be overturned unless the penalty is wholly unwarranted in light of the relevant factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). *Guise v. Dep't of Justice*, 330 F.3d 1376, 1382 (Fed. Cir. 2003). In this case, the agency considered the *Douglas* factors in determining that removal was the appropriate remedy, including the nature and seriousness of the offense, White's status as a manager, White's fifteen years of service and lack of a disciplinary record, the effect of the offense on his ability to perform his job satisfactorily, the effect on his supervisor's confidence in his ability to perform his assigned duties, the potential for rehabilitation, and White's lack of remorse and refusal to take personal responsibility. In view of the agency's reasoned consideration of those factors, we see nothing unwarranted or disproportionate in the penalty of removal.

Lastly, White argues that the AJ abused its discretion in excluding the testimony of certain of White's proffered

witnesses and in excluding certain documentary evidence. Like the government, we see nothing in the record to indicate that White objected to the exclusion of his witnesses while the case was before the AJ. But regardless, it is evident from the description of their proposed testimony that their testimony would have been either cumulative or irrelevant. For example, White challenges the exclusion of Michael Clifford, Acting Labor Relations Specialist, who would have testified that White was not given access to his computer. Since no one disputes that White was not given access to his computer, such testimony was unnecessary. Similarly, White challenges the exclusion of Jewel Marshall, a CFS unit supervisor, who would have testified to the CFS unit's improved performance under White's leadership and the need for overtime during September 2006. But White was not removed for failing to adequately manage the CFS unit or for working overtime, but rather for accepting compensation for time that he did not work. As such, this testimony was irrelevant to the charge at issue.

Finally, the allegation that the AJ improperly excluded certain documentary evidence contradicts the AJ's pre-hearing order, which accepted all the parties' exhibits into the record. Moreover, it appears that the only document not part of the record below was a Performance Evaluation of White for the year beginning October 1, 2004, and ending September 30, 2005. Again, because White was not removed for failure to adequately manage the CFS unit, but for accepting compensation for time that he did not work, had the AJ in fact excluded White's Performance Evaluation, it would not have been an abuse of discretion.

Accordingly, we affirm the Board's decision.

**AFFIRMED**

Costs

No costs.