Kim W. MEYERS

v.

**GENERAL SERVICES ADMINISTRATION.**

Kim W. MEYERS

v.

**GENERAL SERVICES ADMINISTRATION.**

Civ. A. Nos. 83–1021, 83–2383.

United States District Court, E.D. Pennsylvania.

June 22, 1984.

Kim W. Meyers, pro se.

Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., for General Services Admin.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GILES, District Judge.

Mrs. Kim W. Meyers, *pro se*, instituted suit against the General Services Administration (GSA) in two civil actions alleging that various acts of discrimination ultimately led to her removal from employment. The actions were brought pursuant to Title VII of the Civil Rights Act of 1972, 42 U.S.C. § 2000e *et seq.*

### FINDINGS OF FACT

1. Plaintiff is a twenty-seven year old black female who was hired as a custodial laborer by the GSA on July 5, 1978. She was initially given a Veterans Readjustment Appointment having completed three years active duty with the United States Army from October 1974 to October 1977.

2. Plaintiff developed a service-connected disability known as Raynauds Disease. It is an abnormal compromise of the circulatory system.

3. GSA was not informed by the Army, the Veterans' Administration or plaintiff of the nature of the disability or of any physical limitations upon work assignment associated with the disease.

4. Plaintiff's job performance as custodial laborer was satisfactory.

5. On August 14, 1980 and pursuant to its upward Mobility Program, GSA advertised two electronics technician positions in the Office of Real Property, Federal Protective Service, System Section which could be filled at the GS–6, 7 or 8 level. Applicants without specialized experience could qualify through the provisions of the Training and Advancement Development Agreement (TADA) which is part of the agency's Upward Mobility Development System.

6. Plaintiff applied for one of these positions and, on October 5, 1980, was promoted to the trainee position of Electronics Technician, GS–6 in the Security Systems Section of the Federal Protective Service. Plaintiff did not have the requisite specialized experience to enter the program at the GS–7 level.

7. Consequently, on or about December 31, 1980 plaintiff and the agency entered into a training and advancement developmental agreement. Under TADA plaintiff would receive on-the-job training and formal instruction for a period of eighteen months. Upon successful completion of the prescribed training program, plaintiff would be eligible for promotion to the GS–7 level. If the training program was not successfully completed, GSA had the option

of returning plaintiff to her former custodial job or the nearest equivalent vacancy for which she was qualified.

8. The parties subsequently entered into a revised TADA on or about February 25, 1981.

9. Plaintiff's first several months in training were uneventful. Her first evaluation was satisfactory. Her immediate supervisor was Walter Wesley, chief of the security systems section of the Federal Protective Service. Wesley is black. He subsequently left the GSA for a more advantageous position with another federal agency.

10. Plaintiff contends that when Wesley was there she was fairly treated but that soon after he left she was discriminated against by his successors to the position of section chief, who are white. The alleged discrimination is characterized as race, sex and handicap discrimination.

11. Since plaintiff was the only female staff employee in the section, she contends that there must have been a prior purposeful exclusion of women from employment by Federal Protective Service and, with her, there was a determined effort to cause her to fail to complete the training program and, hence, to be demoted from the security systems section.

12. Plaintiff claims that she was the only black staff employee in the system section. This is not entirely accurate inasmuch as the former chief of the section, Wesley, is black. After Wesley left, she was the only black staff member in the systems section. However, she was not the only black staff member in the Federal Protective Service. The systems section was a comparatively new and very small part of Federal Protective Services. The system is too small a unit upon which to base inferences of race or sex discrimination from raw statistical data. Moreover, it appears from the record evidence that Federal Protective Services, during plaintiff's employment, experienced various job freezes. For many employees, then, the systems section was probably not an attractive branch of government in terms of career advancement.

13. Plaintiff's complaint of race discrimination rests upon allegations that the other trainee was white, was brought into the training program as a GS–7, was accorded better training and courtesies by the supervision, and was given a promotion upon completion of the program whereas she was denied a promotion and the opportunity to complete the training.

14. The court finds that plaintiff's claims of harassment by supervision are not borne out by the evidence. Rather, the evidence is compelling that plaintiff was an enigma to supervision, who tried repeatedly and unsuccessfully to decipher, understand and correct plaintiff's poor job performance. Equally persuasive is the evidence that suggests that plaintiff's poor performance was in substantial part attributable to her medical conditions. These included severe migraine headaches, resort to medication for her circulatory problems, and the need for extended periods of sick leave. These medical problems manifested themselves quite often in a lack of concentration, inability to focus on work assignments and communications difficulties with her immediate supervisors and fellow employees.

15. Plaintiff well knew her medical problems. It is equally clear that she never fully acknowledged all of their effects upon her work performance or demeanor. She did appreciate that the "stress" of the job was making her sick. In this, her physician concurred. Further, the doctor recommended to plaintiff and to her section chief that she be reassigned to less stressful duties. When Lester Sitzes, Acting Chief of the Section, asked plaintiff to put such a request in writing she refused. I do not find plaintiff was subjected to any extraordinary work-place stress. What she experienced was no more than that which would be expected in causing an employee to perform the job properly and to comply with established work rules. Even assuming that there were mistakes of judgment in plaintiff's supervision, I do not find that

such were motivated by race, sex or handicap discrimination.

16. Plaintiff chose not to tell her supervisors what specific medical conditions she had or exactly how they were impacting upon her. What she regarded as stressful could not be eliminated either from her training or from the expected job duty of interrelating with other workers and supervision. Consequently, it cannot be said that plaintiff was discriminated against on the basis of her handicap.

17. On or about October 9, 1981, plaintiff submitted a revised Personal Qualification Statement (Standard Form 171) to the Personnel Office. On the basis of the newly submitted information, an agency Personnel Staffing Specialist recommended that the length of plaintiff's TADA be reduced from 18 months to 12 months.

18. Due to a mistake by the GSA, plaintiff was not given a training agreement which would have lasted for twelve months instead of eighteen. This error was discovered after she was in the training program. Plaintiff's training program was not shortened since the program had been planned for an eighteen month period and she could not have received the required training in twelve months. Plaintiff contends that she was denied a promotion because she completed twelve months of training. Part of the training agreement was that upon successful completion of the training program there would be an automatic promotion. The mistake in the length of training in the TADA was not prompted by anyone in Federal Protective Service and it was not motivated by sex, race, or handicap discrimination. The mistake could have worked to plaintiff's advantage because, given her problems in learning the job, she would have had a longer period within which to demonstrate her abilities and competency.

19. An evaluation panel met to discuss plaintiff's possible promotion to the GS-7 level on December 21, 1981. After reviewing the available information on plaintiff's progress under the training agreement, the panel declined to promote plaintiff.

20. Plaintiff was not denied the training specified in the training agreement on the basis of race, sex or handicap. She was given training opportunities which paralleled those of her white counterpart.

21. The white trainee had more prior experience related to electronics and, therefore, qualified for a GS-7 upon entry into training whereas plaintiff qualified for a GS-6.

22. Plaintiff's training supervisors did not discriminate against her in terms of congeniality.

23. Plaintiff received a letter of counselling on August 6, 1981 concerning extended lunch breaks. On October 28, 1981, plaintiff consulted an Equal Employment Opportunity Counselor, alleging that she had been discriminated against because of her race and sex. The final interview by the EEO Counselor was held on December 14, 1981. On that same day, plaintiff was advised of her rights to file a formal complaint of discrimination within fifteen days.

24. There was an established rule that lunch periods were not to exceed thirty (30) minutes. Employees who exceeded this time period were excused if they had work-related reasons acceptable to supervision. Plaintiff was excused from time to time for excessive lunch breaks. However, on other occasions she was reprimanded and warned when she had no excuse or where repeated unexplained latenesses reasonably appeared to be in defiance of recent admonitions by her supervisor. Other employees who abused lunch breaks were similarly treated. Plaintiff's periodic excessive lunch breaks were not the reason for her removal from the training program.

25. Plaintiff was absent from work on a number of occasions due to illness. This affected the time available within which she could be trained. She was never reprimanded or penalized in any way for use of her sick leave. She does complain that John Ramos, her immediate supervisor, once called her at home during one such absence and told her that she was out too much on sick leave. If this statement was made, I find that it was in the context that

plaintiff should try to get well as soon as possible because time away from training was not helpful to her.

26. Plaintiff complained at trial on another occasion that Ramos, who is Hispanic, told her that women should not have the electronics technician job. I do not credit plaintiff's testimony in this regard. At the Merit Systems Protection Board (MSPB) hearing, plaintiff asked Ramos if he had ever told her that she should find another job. I find that this is the more likely question or statement. First, had the statement ascribed to Ramos at trial been made, it would have been used by plaintiff at the MSPB hearing. Second, the supervisors knew plaintiff believed that she was under abnormal stress and blamed them for it. Therefore, it is unlikely that Ramos would have made such a direct statement of discrimination, especially if he had a discriminatory intent. Third, Ramos was not in control of the sex of the personnel who would be assigned to the section. Fourth, there was no personnel authorization to replace plaintiff in the program. Hence, there was no incentive to remove plaintiff so that she could be replaced by a male.

27. A second evaluation panel was held in April and decided to remove plaintiff from the training program, effective April 5, 1982. Plaintiff informally complained of discrimination to an EEO Counselor on April 26, 1982. When informal counselling did not resolve the problem, plaintiff filed a formal complaint on May 18, 1982, alleging discriminatory treatment in connection with receipt of the letter of counselling, removal from the training program, disparate treatment in regard to lunch breaks and the training agreement, and not receiving a promotion in October 1981.

28. The decision to remove plaintiff from the training program was due to her inability to do the required work and was not based upon prohibited criteria. The reassignment to the position of GS–6 technician, without automatic promotion, was also without animus. Plaintiff sought removal from that position for health rea-

sons. The only available position for which she qualified was that of custodial laborer. It was determined by her physician that that job involved physical duties beyond her capabilities. Consequently, plaintiff was removed from the service of GSA because there was no available work for her to do.

29. On June 16, 1982, the agency issued a final decision on that portion of the formal complaint which alleged discrimination in connection with the letter of counselling dated August 6, 1981, rejecting the allegations as untimely in accordance with 29 C.F.R. § 1613.215. Plaintiff was advised of her right to appeal that final agency decision of the Equal Employment Opportunity Commission (EEOC) or to file a civil action in federal district court. Plaintiff appealed the final agency decision to the EEOC on June 22, 1982.

30. In an opinion dated January 25, 1983, the EEOC affirmed the agency determination on the letter of counselling. The opinion included a notice to plaintiff of her right to file a civil action within thirty (30) days after receipt of the Commission's decision.

31. On November 22, 1982, the agency issued a proposed disposition of the balance of the allegations of plaintiff's formal charge filed on May 18, 1982, having determined there was insufficient evidence to support plaintiff's allegations of discrimination based on race and sex, with respect to her removal from the TADA, withholding of training, disparate treatment on lunch breaks and failure to promote in October 1981. Plaintiff did not respond to the proposed agency decision. The agency adopted this proposed decision as the final agency decision on December 15, 1982 and notified plaintiff of her right to appeal within 30 days of receipt of the final decisions. Plaintiff did not file her complaint in United States District Court until March 1, 1983, with respect to the various allegations contained in the initial May 18, 1982 EEO charge.

32. By advance notice dated September 1, 1982 the agency notified plaintiff of a

proposal to change her position and grade from Electronics Technician, GS–6, to that of Custodial Laborer, WG–01, for failure to meet the requirements of the TADA and unsatisfactory performance as an electronics technician. On September 21, 1981, plaintiff met with the Regional Personnel Officer and objected to the proposed reduction on the grounds that physical problems with her arms and head would prevent her from performing duties as a custodial laborer. Plaintiff contacted the agency counselor on September 22, 1982 alleging discrimination based on a handicapping condition because she would be required to undergo a fitness for duty physical examination. The fitness for duty examination was performed on September 30, 1982.

33. After the fitness for duty examination was performed, the physician notified the agency that the plaintiff could not perform the duties of a custodial laborer without it aggravating her physical condition. As plaintiff's unsatisfactory performance as an electronics technician required her return to her old position of custodial laborer under the terms of the TADA and as she was unfit to perform the duties of the custodial laborer position, and as there was no other position within the agency for which the plaintiff was qualified, the agency proposed to remove plaintiff. Advance notice of the proposed removal was given plaintiff on October 15, 1982. By notice of final agency action dated November 18, 1982, plaintiff was removed, effective November 19, 1982.

34. Plaintiff appealed her removal to the MSPB on November 23, 1982. She alleged racial and sex discrimination in connection with the systematic withholding of training, disparate treatment, discrimination based upon a handicapping condition and reprisal for having filed a formal complaint of discrimination. A hearing was scheduled to be held before the MSPB on or about March 16, 1983. That was later continued to April 4, 1983. The MSPB's final decision upholding the agency's motion was issued December 21, 1983. No separate appeal was taken by plaintiff since she had a pending civil action.

35. On March 1, 1983, plaintiff filed the first of two civil actions, alleging discrimination based on race and sex in connection with her employment with the General Services Administration. Specifically, the complaint alleged disparate treatment in regard to plaintiff's pay level and lunch schedule, issuance of a letter of counselling, and termination of employment. Plaintiff's second complaint dated May 18, 1983 included the same allegations as those raised in the first complaint, with two additional instances of alleged discriminatory conduct; namely, removal from the training program and denial of a promotion to the GS–7 level.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over plaintiff's discrimination charges contained in her November 23, 1982 appeal to the MSPB by reason of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–6.

2. The court has jurisdiction over plaintiff's handicap discrimination claim under 5 U.S.C. § 7703(b)(2) since it is "mixed" with the claims of race and sex discrimination. *Williams v. Department of the Army,* 715 F.2d 1485, 1491 (Fed.Cir.1983).

3. The court does not have jurisdiction respecting the issues addressed in the agency's adverse ruling on December 15, 1982, because plaintiff failed to file timely administrative charges and also failed to file a complaint in this court within thirty (30) days of receipt of the agency's final decision.

4. A plaintiff in a Title VII case must carry the initial burden under the statute of establishing a *prima facie* case of intentional discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

5. If the plaintiff succeeds in proving by a preponderance of the evidence a *prima facie* case, the burden then shifts to

the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Burdine, supra.*

6. If the defendant carries this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine, supra; McDonnell Douglas, supra.*

■■■ 7. Title VII does not demand that an employer give preferential treatment to minorities or women. Nor was Title VII intended to diminish "traditional management prerogatives," such as an employer's discretion to determine the proper functions and responsibilities of a particular government position, provided that decision is not based·upon unlawful criteria. *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096, *quoting Steelworkers v. Weber,* 443 U.S. 193, 207, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1979).

■■ 8. Plaintiff met her burden of proving a *prima facie* case of race or sex discrimination. However, the defendant articulated through the introduction of oral and written testimony, legitimate, non-discriminatory reasons for the issuance of the letter of counselling, failure to promote, removal from training and ultimately her removal from ˙employment, namely, unsatisfactory performance under the TADA, and unavailability of other positions for which plaintiff was qualified and capable of performing.

9. The defendant has rebutted the plaintiff's *prima facie* case.

10. The plaintiff has failed to demonstrate that the reasons articulated by the defendant were a pretext for unlawful discrimination.

11. Plaintiff has failed to show that "but for" sex or race discrimination she would have received promotions, completed the TADA and not been removed from employment. *See* 42 U.S.C. § 2000e–5(g); *Richerson v. Jones,* 551 F.2d 918, 923–925 (3d Cir.1977).

12. Plaintiff failed to prove by a preponderance of the credible evidence that the GSA's actions were motivated by handicap discrimination.