Charles Patrick **MEEHAN**, Petitioner,

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**Appeal No. 83–690.**

United States Court of Appeals, Federal Circuit.

Oct. 6, 1983.

---

David Schwartz, Washington, D.C., argued for petitioner.

Sara V. Greenberg, Washington, D.C., argued for respondent. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Washington, D.C.

Before BENNETT, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

Charles Patrick Meehan was removed from his position as a Distribution Clerk with the U.S. Postal Service (the agency) for threatening to do bodily harm to two senior Post Office officials. Meehan attacks the merits of the decision of the Merit Systems Protection Board (board) upholding his removal and asserts that the penalty is "unconscionably disproportionate" to the offense. The agency has moved to dismiss the appeal on the ground that the case involves charges of racial discrimination and, therefore, the appeal is not within the jurisdiction of this court under 5 U.S.C. § 7703(b)(1). We hold that we have jurisdiction and we affirm on the merits.

## I

### Background

On October 31, 1979, the agency suspended Meehan for 30 days and on December 26, 1979, permanently discharged him from its employment for "such cause as will promote the efficiency of the service." 5 U.S.C. § 7503 (1980). At the time of his removal Meehan was 35 years old, a veteran, and a career employee of the Postal Service with seven years service. In 1978 he had been disciplined twice for disrespectful conduct to a postal official and failure to follow official instructions.

The incident which is the basis for the removal occurred on October 2, 1979. Meehan went to Acting Tour Superintendent Donald A. Sink to find out about a request Meehan had made for a change in his days off. Sink had approved the request and forwarded it for final approval by Arthur Butler, Manager of Distribution, and Marvin Thomas, Director of Mail Distribution. According to Sink, Meehan had previously told Sink that he had discussed the request with Butler and Thomas, that Butler was prejudiced against him, and that he was afraid they would deny it. Upon being told by Sink that there was no decision from Butler's office, Sink stated that Meehan became extremely angry, brought his fist down on the desk, and said, "I only want to work here until December and then I'm going to go to Florida anyway. And I'm going to take one of the m..... f.....s out before I go." Sink testified that he believed Meehan was referring to Thomas and Butler because of previous conversations with Meehan about these men and the problems he had had in getting his days off changed.

But for the intervention by D.P. Kirkman (a Tour Superintendent), however, it is not clear that Meehan's conduct would have been reported. Three days after the incident, on October 5, 1979, Sink told Kirkman about Meehan's outburst and Kirkman made a report, following which Sink also submitted a sworn statement. A statement was also obtained from another employee, Joanne Jackson, who was present and overheard Meehan's remarks to Sink. Meehan denied, and continues to deny, that he made the threat reported by Sink, asserting that Sink was coerced into making the report.

On December 7, 1979, the agency issued Meehan's removal notice to become effective December 26, 1979. Previously, the agency suspended Meehan on October 31, 1979 for 30 days on an emergency basis. Meehan appealed both the suspension and removal actions to the board.

The Presiding Official, on his own motion, consolidated the two appeals. On the basis of the record at the hearing held in January 1980, the Presiding Official refused

to sustain either suspension or removal of Meehan, holding:

> From the foregoing, I find Mr. Sink's testimony less credible than appellant's [Meehan's] testimony. Since the charge was based entirely on Mr. Sink's testimony, I find the agency has failed to support the charge by the preponderance of credible evidence.

Following this decision, the agency successfully argued before the board that consolidation of the appeals deprived the agency of the opportunity to fully develop the facts pertaining to removal, and the case was accordingly remanded for a new hearing on the removal.[1]

At the second hearing before a different Presiding Official held in October 1981, the agency called Jackson as a witness in addition to Sink.[2] On the basis of the record in both hearings the Presiding Official found that the agency had carried its burden of persuasion by a preponderance of the evidence.

As to the appropriateness of the penalty, the Presiding Official found:

> As stated *supra,* threatening a Postal supervisor is a serious offense. The agency's table of penalties reflects that removal is an appropriate penalty for such an offense. T.J. Beckett, a Labor Relations Assistant, testified that the agency had issued notice to its employees warning them that they could be removed if they made threats to other employees. In addition to the current charge, the record shows that appellant was suspended for 7 days in November 1978 for disrespectful conduct toward a Postal official, and he was suspended for 14 days in December 1978 for failing to follow official instructions and for disrespectful conduct toward a Postal official. Therefore, I find that the penalty of removal was not arbitrary or unreasonable, and I find

that it constituted an appropriate penalty.

The issue of racial discrimination entered the case by reason of the following statement by Meehan, who is white, on a standard MSPB appeal form which he filled in:

> 13.(a) If you believe you were discriminated against by the agency because of either your race, color, religion, sex, national origin, marital status, political affiliation, handicapping condition, or age, indicate so and explain why you believe it to be true. You must indicate, by examples, how you were discriminated against. [Answer] I have been in a predominantly black facility and I've filed numerous complaints with the Union, Senator Mathias, Congresswoman Spelling [sic], G.A.O., the Civil Service Commission. When I sustained an injury then all the trouble started happening.

With respect to the issue of discrimination, the Presiding Official ruled as follows:

> Appellant contended that the agency discriminated against him and took reprisal against him in the removal action in that he worked in a predominantly Black facility, he filed numerous complaints with various agencies and officials, and when he sustained an injury, "all the trouble started happening". Appellant has the burden to prove these contentions. *See* 5 U.S.C.A. Sections 2302(b)(1), 7701(c)(2)(B) (West.Supp.1979); 5 C.F.R. Section 1201.56(b)(2) (1981). However, appellant has neither explained these contentions nor introduced any evidence to support them. Therefore, I do not find that the removal action was based on discrimination or reprisal for appellant's complaints.

In this appeal Meehan attacks the board's conclusions that (1) the testimony of Smith and Jackson that a threat was made was credible, (2) the words (if uttered) connoted

---

1. The suspension was handled separately by the board and was set aside because of invalid regulations.

2. Two other witnesses testified for the agency. J.A. Powell, a Postal Inspector, and T.A. Beck-

ett who is a Labor Relations Assistant at the Post Office in Washington, D.C. However, their testimony was not for the purpose of corroboration of Sink's testimony.

a threat, and (3) the penalty of removal was not too severe.

## II

### *Jurisdiction*

■ Initially, we consider the agency's argument that this court is without jurisdiction to hear this appeal. Our jurisdictional mandate under 5 U.S.C. § 7703(b)(1)[3] excludes appeals of MSPB decisions in "cases of discrimination subject to the provisions of section 7702." Cases involving discrimination under § 7702 may be pursued by civil action in a district court.[4] The agency argues that this court is not the proper forum for review of the MSPB decision because Meehan alleged and continues to argue that race discrimination, prohibited by the Civil Rights Act of 1964, was a basis for the removal action against him.

In *Williams v. Department of the Army,* 715 F.2d 1485 (Fed.Cir.1983), a case in which issues of discrimination and issues directed to the merits had been raised below, an employee sought to pursue dual routes of judicial review. This court, presented with only the nondiscrimination issues, held that it lacked jurisdiction. However, in *Williams,* the employee had filed a complaint in a district court on the basis of the discrimination issues raised in the MSPB appeal. The splitting of a challenge to a single adverse action into two appeals was held to be impermissible and the case was, accordingly, transferred to the district court in which suit had been filed. This case does not present a comparable situation.

Firstly, we note that this petitioner's above-quoted reference in the appeal form

to the racial composition of the facility, if proved, would be insufficient to establish that a basis for the adverse action was racial discrimination. While the board opted to dignify that reference as a "contention" of racial discrimination, we hold that it was not. Section 13(a) of the appeal form expressly instructs appellants to "indicate" that they *"were discriminated against,"* to "explain why you believe it to be true," and to give "examples, *how you were discriminated against."* (Emphasis supplied). Petitioner's answer was in no way responsive to these clear, lay-language instructions for meeting the statutory requirement of an allegation that a basis for the appealable action was prohibited discrimination. In view of the full panoply of procedures and protections, including a *de novo* trial in a United States district court, which are conferred upon an employee in a § 7702 case, the basis for asserting discrimination should be expressly and unequivocally stated, and not be so worded as to require the Presiding Official to strain to supply it.

Secondly, no evidence of racial discrimination was offered by petitioner. Thus, it cannot be said that an issue of discrimination was tried by the parties, even though not specifically raised by the petition. The only testimony in the record relating to racial prejudice came from the agency's witness, Sink. Scrutiny of that testimony suggests no more than that Meehan believed that the denial of his requests for a change in days off was due to prejudice. In addition, arguments in Meehan's brief attempt to use his feelings of discrimination

---

3. Section 7703(b)(1) reads:

Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.

4. Section 7703(b)(2) reads:

Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case

as justification for his show of anger.[5] But the record is devoid of evidence that a basis for the removal action was racial prejudice.

Finally, and most importantly, Meehan's counsel represented that Meehan has no intention of filing a complaint to obtain *de novo* review of racial issues in a district court, and, in any event, the time for filing such a complaint has expired. This action is not now, and never will become, a "mixed case." No issue of racial discrimination has been raised on appeal and none can or will be raised. Thus, the considerations that compelled this court in *Williams* to conclude that it was without jurisdiction are not present in this action. This case involves only nondiscrimination issues. It is precisely this type of appeal over which this court was given exclusive jurisdiction by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25.

In sum, we conclude that racial discrimination has not been put forth substantively as a basis for the adverse action and that the appeal is not excluded from our jurisdiction as a case of discrimination subject to the provisions of § 7702.[6]

### III

■ Meehan attacks the merits of his removal on the ground that the decision is not supported by substantial evidence. In particular, Meehan would rule out Sink's testimony on the theory that, since Sink was held to lack credibility in the first hearing, he could not be found credible in the second. In the first hearing the Presiding Official found that the agency failed to sustain its burden of proof by Sink's testimony alone. We agree with the MSPB that that holding is not tantamount to finding Sink wholly incredible.

■ Meehan next challenges that Jackson did not corroborate Sink's precise testimony with respect to the words of the threat. Jackson testified that she heard Meehan make threatening remarks in a loud voice but admitted that she did not remember his exact words. We find no error in the board's ruling that she corroborated the fundamental element of the charge. Meehan had denied that any threatening words were uttered. Considering the record as a whole, we cannot overturn the decision on the ground that the finding that a threat was made is unsupported by substantial evidence.

■ Meehan would have us rule that the words "take one of those two m . . . . . f . . . . . s out" are too ambiguous, vague, and indefinite to be taken as an actual threat. In other words, the alleged threat should be deemed no more than "an empty expression of anger . . ., neither seriously meant, nor seriously to be taken." It had been suggested to the Presiding Official that the words did not necessarily mean bodily harm, but rather a threat of reporting a

received notice of the judicially reviewable action under section 7702.

5. Meehan does argue in his brief that racial prejudice may have motivated Jackson's statement or provided motivation for dismissal among the agency's management. However, these arguments will not be considered for the first time at the appellate level. *Bradbie v. EEOC,* 705 F.2d 1331, 1335 (Fed.Cir.1983). In any event, counsel urged at the hearing that his racial prejudice arguments should be understood to be directed only to mitigation of the penalty.

6. We note that Meehan did not raise the issue of discrimination in his petition to the board for review of the Presiding Official's decision and that the decision by the MSPB contains no discussion of discrimination. However, in view of the limited grounds for obtaining review of a Presiding Official's initial decision by the board (*see* 5 CFR § 1201.115), the issue of discrimination may be preserved even though not presented to the board itself where only an evidentiary basis for challenging the finding of no discrimination exists. It is the Government's position that the decision of the Presiding Official on discrimination should be deemed incorporated by reference into the final decision. This position affords an employee the greatest rights and conforms to the language of 5 U.S.C. § 7703(c) that in a case of discrimination "the employee or applicant shall have the right to have the facts subject to trial *de novo* by the reviewing court." Thus, we conclude that the failure to raise the discrimination issue in the petition for review does not, *ipso facto,* constitute a waiver and an alternative basis for holding that this court has jurisdiction.

supervisor's action or even "taking him out to lunch." Giving the connotation which a reasonable person would give to the words, we find no error in the board's rejection of that interpretation.

## IV

 With respect to the severity of the penalty, Meehan argues that removal does not fit the crime because the alleged threat was not made or was not seriously meant. If we were to accept Meehan's position, it would be appropriate to reverse the action, not merely modify the penalty. Having concluded that the board did not err in holding that a threat to do bodily harm to Butler or Thomas was made, we cannot adopt the ground which was rejected for reversal as the basis for mitigation of the penalty.

Meehan argues that removal is too severe in view of the unfairness in allowing a second hearing in this proceeding with its attendant delays. In *Boyce v. United States,* 543 F.2d 1290 (Ct.Cl.1976), the court did set aside a penalty of removal where a second hearing was held solely because the Government sought reconsideration of the penalty. At the second hearing, the penalty was raised from suspension to removal without reasons being provided for the increase in severity. However, unlike the *Boyce* case, this case was reopened to receive additional evidence because of procedural error which prejudiced the Government's case on the merits. We are unpersuaded that the second hearing in this case created any unfairness to Meehan which requires mitigation of the penalty. Moreover, unlike *Boyce,* the basis for the penalty was fully explained.

Meehan's final argument focuses on the fact that a general notice was issued to employees by the agency warning them that they could be removed for threats to other employees. Meehan does not dispute that removal is within the agency's table of penalties for a threat of bodily harm to another employee, but argues that imposition of the specified penalty must be restricted to employees who received a copy, or were aware, of the special warning. We do not agree that issuance of a warning restricted the agency's right to impose the stated penalty only to those who had the benefit of additional notice. Given the serious nature of the offense, we find no abuse of discretion in imposing the penalty of removal.

## V

All other arguments of the parties have been considered and need no comment. The decision of the MSPB is *affirmed.*

AFFIRMED.