**Gary KEAN, New Cumberland, PA, Appellant,**

v.

**Michael P.W. STONE, or his successor, Secretary of the Army, United States Department of the Army, Pentagon, Washington, D.C., 20310; Colonel John Joseph, Commanding Officer, New Cumberland Army Depot, New Cumberland, Pa 17070; Merit Systems Protection Board, 1120 Vermont Avenue, N.W., Washington, D.C.; U.S. Department of the Army, Pentagon, Washington, D.C. 20310.**

**No. 90–5537.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 26, 1990.

Decided Feb. 20, 1991.

Before BECKER, NYGAARD, Circuit Judges and POLLAK, District Judge *

OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

I.

Several years ago the plaintiff was fired from his federal job. By petition to the Merit Systems Protection Board (MSPB), plaintiff protested the firing. After protracted administrative proceedings, the plaintiff prevailed: it was determined that the federal agency for which plaintiff worked had, in firing him, discriminated against him on account of a handicap. Accordingly, plaintiff was ordered reinstated with back pay. Then plaintiff petitioned the MSPB for an order fixing a fee, to be paid by the defendant agency, to compensate plaintiff's attorney for his successful services. The MSPB agreed that a fee was owing, but .the award was substantially lower than plaintiff thought warranted. 41 MSPR 618. Plaintiff appealed the award to the federal district court for the Middle District of Pennsylvania, the district that embraces the situs of plaintiff's federal employment. That court granted the government's motion to dismiss for lack of jurisdiction: parsing the complex statutory provisions governing judicial review of MSPB decisions, the court concluded that, in a situation in which the allegedly discriminatory character of plaintiff's discharge had been resolved in plaintiff's favor at the administrative level and would not be judicially reexamined, review of an MSPB attorney-fee award lay not in a district court but in the Court of Appeals for the Federal Circuit.

Plaintiff has appealed to this court from that jurisdictional determination. To put the relevant legal issues in proper context, we think it will be useful to begin by outlining in some detail the proceedings which constitute the background for plaintiff's fee application.

Martin R. Cohen (argued), Staff Counsel, American Federation of Government, Employees AFL–CIO, Philadelphia, Pa., Mark D. Roth, General Counsel, American Federation of Government, Employees AFL–CIO, Washington, D.C., for appellant.

James J. West, U.S. Atty., Richard W. Sponseller (argued), Sally A. Lied, Asst. U.S. Attys., Harrisburg, Pa., for appellees.

* The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## A. *Plaintiff's Discharge*

Over seven years ago—on December 16, 1983—Gary Kean, an alcoholic civilian employee of the Army, was fired from his job at the New Cumberland (Pa.) Army Depot. That event precipitated litigation which has threaded its way through two federal agencies—the Merit Systems Protection Board (MSPB) and the Equal Employment Opportunity Commission (EEOC)—before coming to court.

Kean was fired because, in the morning of September 20, 1983, he phoned the New Cumberland Army Depot to report that he had a severe stomach-ache and could not come to work. The next day, September 21, 1983, Kean did come to work and brought with him a physician's statement, dated "9/21/83," reciting that Kean "was ill today with abdominal upset—possible appendicitis." But Kean's superiors viewed Kean's phone report of the previous day as a falsehood—an anticipatory cover-up for a day's tavern-drinking which culminated in an arrest for driving while intoxicated. The falsehood was perceived as culpable because it appeared calculated to gain a day of sick leave when Kean was not in fact unable to work; and the falsehood was perceived as doubly culpable because it appeared repetitive of a false report three months earlier that had led to a five-day suspension. Before Kean's superiors determined what new discipline to impose, Kean agreed to enter a residential alcohol treatment program that Army personnel authorities had been pressing Kean to enroll in for over a year. Kean completed the program on October 31, 1983. On November 1, 1983—the very next day—the Army announced its intention to terminate Kean's employment on the basis of the September 20, 1983, misrepresentation. Kean's answer to the charges failed to change the Army's mind, and on December 5, 1983, the Army made the discharge final, effective December 16, 1983.

## B. *Proceedings Before the MSPB and the EEOC*

Kean, represented by an attorney on the legal staff of his union, the American Federation of Government Employees (AFGE), promptly challenged his discharge by initiating a proceeding before the Merit Systems Protection Board (MSPB). Kean contended that (1) the Army had not established the falsehood of the September 20, 1983, stomach-ache report, and (2) the Army had not properly accommodated Kean's alcoholism and hence had discriminated against him on the basis of a handicap, in contravention of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791. At the first level of Board inquiry into the challenged agency action, Kean was in part successful: the MSPB administrative law judge ("Presiding Official" in MSPB parlance) held against Kean on his discrimination claim but concluded that the Army had not demonstrated that Kean did not have a disabling stomach-ache on September 20, 1983. However, on the Army's appeal to the Board proper, the decision of the administrative law judge was reversed: the Board did not disturb the holding that Kean had not been discriminated against; but the Board did conclude that the Army had demonstrated the falsity of Kean's September 20 report by a preponderance of the evidence and that discharge was a not unreasonable sanction. *Kean v. Department of the Army*, 24 M.S.P.R. 226 (1984).

On December 10, 1984—almost exactly a year after his termination—Kean filed with the Equal Employment Opportunity Commission (EEOC) a petition seeking review of that portion of the MSPB ruling that found against Kean on his discrimination claim. On March 11, 1988, the EEOC issued an opinion announcing and explaining "the decision of the Commission to differ with the Board decision":

[V]irtually immediately after his misconduct in September 1983, petitioner sought the intensive assistance which had previously been advised. The agency granted petitioner's leave request with full knowledge that petitioner would utilize the leave to participate in a residential treatment program. There is no indication in the record that petitioner was advised that he would be terminated for his misconduct, but the agency would permit him to obtain treatment while still

technically employed and, thus, presumably entitled to certain insurance benefits. Rather, the proposal to remove petitioner had not yet been issued and no decision had been reached regarding the appropriate disciplinary decision.

Given that the agency had acquiesced in petitioner's decision to seek treatment prior to the making of any disciplinary decision, the Commission finds that the agency was obligated to provide petitioner with the opportunity to demonstrate the effectiveness of the accommodation it offered him. Consequently, the agency should have notified petitioner that its disciplinary decision would be deferred pending a reasonable period during which petitioner must show a favorable response to the treatment he received. Accordingly, the Commission does not reach the question of whether the agency could have immediately terminated petitioner after the September 1983 incident without granting any request for additional accommodation. As the accommodation had already been sought and granted, such a question becomes irrelevant.

Accordingly, the Commission referred Kean's case back to the Board. On July 1, 1988, the MSPB issued an opinion announcing that it concurred in the EEOC decision for the reason that, pursuant to its holding in *Ignacio v. United States Postal Service,* 30 M.S.P.R. 471, 486 (Spec.Pan.1986), the Board deemed itself bound by Commission interpretations of discrimination law, as distinct from civil service law. Therefore, the Board ordered the Army to "cancel the appellant's [Kean's] removal and to restore the appellant retroactively effective December 16, 1983," and "to award back pay and benefits."

Thus, at long last—four-and-a-half years after the event—the MSPB decision of July 1, 1988, resolved the merits of Kean's claim in his favor. The decision also set the stage for further litigation, an initial phase of which is now before this court.

That further litigation addresses the question of payment by the Army for the 31.5 hours of legal services performed by Kean's attorney in overturning Kean's wrongful discharge. A petition for an order directing such additional relief was filed with the MSPB soon after the Board rendered its final decision sustaining Kean's claim. The statutory basis for the application was 5 U.S.C. § 7701(g):

(g)(1) Except as provided in paragraph (2) of this subsection, the Board or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

(2) If an employee or applicant for employment is the prevailing party and the decision is based on a finding of discrimination prohibited under section 2302(b)(1) of this title, the payment of attorney fees shall be in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

In short, since Kean had been "the prevailing party," § 7701(g)(1), and since the decision in his favor was "based on a finding of discrimination," § 7701(g)(2), Kean felt that he was entitled to an award "of attorney fees ... in accordance with the standards prescribed," *id.,* in employment discrimination cases arising under section 706(k) of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5(k), better known as Title VII. Kean contended that the Board should calculate the award pursuant to then-prevailing market rates—$100 per hour for the first 30 hours, and $125 per hour for the last 1.5 hours, for a total of $3187.50. As authority for the proposition that a market-rate standard was proper not only for private-sector attorneys but also for attorneys working for non-profit orga-

nizations, Kean relied on *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), where the Court unanimously endorsed a market-rate standard in a civil rights case in which the plaintiff-class was represented by the New York Legal Aid Society. (*Blum v. Stenson* was a section 1983 case (42 U.S.C. § 1983) involving a fee award under 42 U.S.C. § 1988, but the Court's opinion quite evidently assumes the appropriateness of a market-rate standard for Title VII cases as well. 465 U.S. at 894 n. 10, 104 S.Ct. at 1546 n. 10).

However, the Board rejected a market-rate standard in Kean's case because his attorney worked for a union, namely AFGE, not for a legal services organization. For the significance of this distinction, the Board relied on two decisions of the Court of Appeals for the Federal Circuit—*Goodrich v. Department of the Navy,* 733 F.2d 1578 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985); and *Devine v. National Treasury Employees Union,* 805 F.2d 384 (Fed.Cir.1986). In *Goodrich* and *Devine,* which at the MSPB level were successful challenges—albeit not on discrimination grounds—to adverse federal personnel actions, the Federal Circuit held that union attorneys representing the grievants could only be compensated on a cost basis—i.e., their hourly union salary plus overhead. Compensation on a market-rate basis, the Federal Circuit reasoned, would result, unethically, in the return of a law-practice-derived profit to an enterprise for

which the rendering of legal services was a very secondary institutional objective. Moreover, the Federal Circuit held that arrangements—such as those established by the AFGE and by the National Treasury Employees Union (NTEU)—under which court-awarded fees would go into a special litigation fund would not cure the ethical problem.[1]

In declining to fashion a market-rate award in Kean's case, the Board also placed strong reliance on its own earlier decision in *Seibel v. Department of the Navy,* 29 M.S.P.R. 233 (1985). Seibel—like Kean in the present case—had prevailed before the Board on the merits of a claim that she was discriminated against on the basis of a handicap. Accordingly, her attorney fees, like Kean's, were to be calculated pursuant to the Title VII standards incorporated by reference in 5 U.S.C. § 7701(g)(2). The Board there held that a market-rate fee award was not warranted even though, had such an award been made, Seibel's union attorneys would merely have been required by their union-employer to reimburse the union-employer for salaries and expenses, retaining any excess for themselves.

The Board acknowledged that the Ninth Circuit, in *Curran v. Department of the Treasury,*[2] had found the Federal Circuit's decisions in *Goodrich* and *Devine* unpersuasive. And the Board also acknowledged that its decision in *Seibel* had been reversed by the District Court for the District of Connecticut.[3] But the Board held

---

1. In *Devine,* the Federal Circuit noted that in *Goodrich* "we left for a later day the question whether awarding market rate fees to the union would be appropriate where its legal representation fund *fully* supported the union's legal services program." 805 F.2d at 388 (emphasis in original). In *Wells v. Schweiker,* 12 MSPB 329, 14 M.S.P.R. 175 (1982), the MSPB decided that question in the negative. The steps taken by unions such as the NTEU and the AFGE to establish special litigation funds as repositories for court-awarded fees appear to have been responsive to a dictum of the District of Columbia Circuit in *NTEU v. Department of the Treasury,* 656 F.2d 848 (D.C.Cir.1981), suggesting that ethical difficulties would be obviated if fees were "plowed back into the litigative programs that made their recovery possible in the first place." *Id.* at 854. *See Curran v. Department of the*

*Treasury,* 805 F.2d 1406, 1408 (9th Cir.1986). The Ninth Circuit in *Curran* (a) expressed agreement with the *NTEU* dictum and disagreement with *Goodrich, Devine* and *Wells v. Schweiker,* and (b) reserved judgment on whether "a separate fund actually is required." 805 F.2d at 1408 n. 1.

2. 805 F.2d 1406 (9th Cir.1986). *See* note 1, *supra.*

3. *Seibel v. Lehman,* Civ. No. H–86–355 (MJB), 1987 WL 60304 (D.Conn., Jan. 13, 1987) (Slip op. pp. 3–4). The author of the unpublished opinion was the late Judge Blumenfeld. He interpreted the Supreme Court's decision in *Blum v. Stenson* "as standing for the general, inclusive proposition that the market rate is appropriate in awarding attorney's fees in all

that it was free to disregard the Ninth Circuit, and also the reversal in *Seibel*, because it is the Federal Circuit to which the Board looks for "controlling authority." [4]

Having rejected Kean's request for a market-based fee of $3187.50, the Board determined that the appropriate cost-based (salary plus overhead) fee was $1134.

## C. *The Proceedings in the District Court*

Plaintiff decided to seek judicial review of the MSPB fee award. But it was not at all clear in what court plaintiff should file his petition for review.

Section 7703 of Title 5 governs "Judicial Review of decisions of the Merit Systems Protection Board." Subsection (b)(1) provides, in pertinent part, "[e]xcept as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." Paragraph (2) provides, in pertinent part, that "[c]ases of discrimination subject to the provisions of section 7702 of this title shall be filed under" the 1964 Civil Rights Act, or the Age Discrimination in Employment Act, or the Fair Labor Standards Act, "as applicable"; all three of these statutes contemplate review in a federal district court. Section 7702—the section that defines the categories of

"[c]ases of discrimination" that are reviewed by district courts rather than by the Federal Circuit—includes, *inter alia,*

(a)(1) ... the case of any employee ... who—

(A) has been affected by an action which the employee ... may appeal to the Merit Systems Protection Board, and

(B) alleges that a basis for the action was discrimination prohibited by—

\*   \*   \*   \*   \*   \*

(iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791).

Since the "basis for" Kean's successful claim on the merits was "discrimination prohibited by ... section 501 of the Rehabilitation Act," the question on which the proper locus of appellate jurisdiction appeared to turn was whether the MSPB's disposition of Kean's attorney fee application should be regarded as independent of Kean's claim on the merits, and hence reviewable by the Federal Circuit, or whether it should be assimilated to Kean's claim on the merits, and hence reviewable by a district court.

In the face of this uncertainty, Kean elected to file his petition for review in the District Court for the Middle District of Pennsylvania—the judicial district in which the New Cumberland Army Depot is located. At the same time, to protect against the possibility that the district court was

civil rights cases, no matter what the institutional affiliation of the attorneys." Slip op., pp. 3–4. He characterized as "inapposite," *id.* at 4, the cases relied upon by the government to support the Board's cost-based award. In particular, Judge Blumenfeld observed that the Federal Circuit's decision in *Goodrich* was a (*id.* at 4–5) "fee application ... brought pursuant to a provision of the Back Pay Act under 5 U.S.C. § 7701(g)(1). *Goodrich* specifically distinguished itself from *Blum* (and hence from the present case) by noting that: '[T]he suit in *Blum* was brought under a civil rights statute. A major reason for awarding attorney's fees in such cases is to encourage and facilitate the bringing of suit to protect and vindicate those rights.... There is no comparable public policy to encourage the bringing of suit by federal employees challenging adverse personnel actions against them. 733 F.2d at 1580–81.'"

In *Devine*, 805 F.2d at 388, not referred to by Judge Blumenfeld, the Federal Circuit reiterated the point made in *Goodrich:*

Different concerns exist when awarding attorney fees in civil rights cases where encouraging private attorneys general to come forth and challenge governmental abuses is undeniably an important concern, *see Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (Court held that under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (Supp. V 1981), non-profit legal service organizations are entitled to a fee based on prevailing market rates rather than their costs); *see also Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and more compelling than in adverse action cases such as the one at bar. *Goodrich, supra,* at 1581–82.

**4.** J.A. 12. In support of this proposition, the Board cited *Fairall v. Veterans Administration,* 33 M.S.P.R. 33, 39 (1987), *aff'd,* 844 F.2d 775 (Fed.Cir.1987).

not the proper appellate venue, Kean filed a contingent review petition in the Federal Circuit—a petition that has been dismissed, but subject to reactivation in the event that it is finally determined that plaintiff's challenge to the MSPB fee award should be addressed by the Federal Circuit. Brief for Appellant, p. 6.

Given that the MSPB, in fashioning a cost-based fee award, relied on two decisions of the Federal Circuit (*Goodrich v. Department of the Army, supra,* and *Devine v. National Treasury Employees Union, supra*), it was hardly surprising that Kean elected to seek review in a district court. Conversely, it was hardly surprising that the government responded to Kean's filing by moving to dismiss for lack of jurisdiction.

The district court granted the motion to dismiss. From the order of dismissal, Kean has appealed to this court.

## II.

To understand the current bifurcation of appeals from decisions of the Merit Systems Protection Board—most cases going to the Federal Circuit, but discrimination cases going to district courts—one must revisit two major legislative enactments, the Civil Service Reform Act of 1978 and the Federal Courts Improvement Act of 1982.

The Civil Service Reform Act of 1978 was responsive to the joint perception of Congress and the executive branch that the Civil Service Commission—which had since 1932 exercised statutory dominion over the personnel practices of the burgeoning federal establishment—had such a broad panoply of frequently disharmonious responsibilities that it was not fulfilling any of them in optimal fashion. A particular concern was the conflation, under a single Commission, of (1) the duty to advise and supervise federal agencies in the performance of their personnel functions, and (2) the duty to adjudicate grievances of federal employees challenging agency personnel actions. The proposed legislative solution—accomplished in the Civil Service Reform Act—was to "abolish the Civil Service

Commission," and to establish in its place "two new agencies ... (1) The Office of Personnel Management, charged with personnel management and agency advisory functions, and (2) the Merit Systems Protection Board, charged with insuring adherence to merit system principles and laws." S.Rep. No. 95–969, 95th Cong.2d Sess. 5, reprinted in [1978] U.S.Code Cong. & Ad. News 2723, 2727.

Congress was at pains to insure that decisions of the newly-established Merit Systems Protection Board would be—as decisions of the Civil Service Commission had been—subject to judicial review. The Senate report on the bill which became law explains the judicial review arrangements adopted in 1978 (S.Rep. No. 95–969, *supra* at 62–3), U.S.Code Cong. & Ad.News 1978, 2784, 2785.

Section 7702(a) authorizes an employee or applicant adversely affected by a final order or decision of the Board to seek judicial review. The section applies to judicial review of all final orders or decisions of the Board, including discrimination and other appeals acted on by the Board under section 7701 and disciplinary actions taken by the Board against employees under section 1207.

\* \* \* \* \* \*

Subsection (b) specifies the forum in which an employee or applicant may bring the review proceeding. Currently employees who wish to challenge Commission decisions generally file their claims with U.S. District Courts. The large number of these courts has caused wide variations in the kinds of decisions which have been issued on the same or similar matters. The section remedies the problem by providing that Board decisions and orders (other than those involving discrimination complaints and determinations concerning life and health insurance) be reviewable by the Court of Claims and U.S. Courts of Appeals, rather than by U.S. District Courts.

Under the anti-discrimination laws an employee has 30 days from the final agency action to initiate a de novo district court proceeding. District court is a

more appropriate place than the Court of Appeals for these cases since they may involve additional fact-finding. Furthermore, discrimination complaints involving employees outside the Federal government are now considered by U.S. District Courts. To encourage uniformity in judicial decisions in this area both kinds of cases should continue to be considered by the U.S. District Court. The section therefore exempts from the general requirement that employees appeal to the Court of Appeals or Court of Claims those suits brought pursuant to the anti-discrimination laws.

The appellate arrangements established by the Civil Service Reform Act of 1978 lasted four years. In 1982, in the Federal Courts Improvement Act, Congress abolished both the Court of Claims and the Court of Customs and Patent Appeals and consolidated the functions of those courts in a new circuit court of appeals, the Court of Appeals for the Federal Circuit. Among the items of Court of Claims jurisdiction transferred to the Federal Circuit was that portion of appellate jurisdiction in MSPB non-discrimination cases which had been assigned to the Court of Claims by the Civil Service Reform Act of 1978. Simultaneously, Congress transferred from the other courts of appeals to the Federal Circuit the balance of appellate jurisdiction in MSPB non-discrimination cases. 28 U.S.C. § 1295(a)(9). District court appellate jurisdiction in MSPB discrimination cases was left undisturbed.

As the quoted Senate report on the Civil Service Reform Act of 1978 makes plain, Congress had two reasons for retaining appellate authority over MSPB discrimination cases in the district courts. The first reason was that, pursuant to the governing anti-discrimination statutes, review of discrimination cases—unlike review of civil service cases—would often entail *de novo* examination of the controversy, a responsibility appropriate for a trial court but not for an appellate court. The second reason was that "discrimination complaints involving employees outside the Federal government are now considered by U.S. District Courts," and it was felt that "[t]o encour-

age uniformity in judicial decisions in this area both kinds of cases should continue to be considered by the U.S. District Court." S.Rep. No. 95–969, *supra* at 63 [1978] U.S. Code Cong. & Ad.News, *supra* at 2785. Congress did not, however, give express guidance on what was to happen when an MSPB case involved both discrimination and non-discrimination claims—a so-called "mixed" case. Was a "mixed case" to be severed, for purposes of appeal, into its discrimination and non-discrimination components? Or was it to be kept as a single case?—and, if so, to what court should it go?

Before the establishment of the Federal Circuit, the courts addressing the question had uniformly decided that "such cases must be treated as a unit and must go first to the district courts." *Hayes v. United States Government Printing Office*, 684 F.2d 137, 140 (D.C.Cir.1982). See also *Wiggins v. U.S. Postal Service*, 653 F.2d 219 (5th Cir.1981), and decisions of the First, Ninth and Tenth Circuits cited in *Hayes, supra*, 684 F.2d at 140 n. 2. Soon after the appellate authority of the courts of appeals and the Court of Claims devolved upon the new Federal Circuit, that court had occasion, in *Williams v. Department of Army*, 715 F.2d 1485 (Fed.Cir.1983), to address the problems considered in *Wiggins, supra*, and *Hayes, supra*. *Williams* was a challenge to the discharge of a civilian administrator of a Chicago military police unit; the challenge was two-fold—both that, objectively considered, the discharge was unjustified on the merits, and that, quite apart from the charged misconduct, the discharge was tainted by racial bias. When the MSPB rejected both claims, Williams petitioned the Court of Claims to review the merits of the discharge and petitioned the District Court for the Northern District of Illinois to review the claim of racial bias. The Department of the Army moved the Federal Circuit, as successor to the Court of Claims, to dismiss the appeal challenging the MSPB's ruling on the merits of the discharge. Speaking through Judge Nies, the Federal Circuit, sitting *en banc*, concluded, in reliance on *Wiggins* and *Hayes*

and similar decisions in other circuits, that Williams' case was a non-severable "mixed" case over which it lacked jurisdiction; accordingly, the Federal Circuit transferred its portion of Williams' case to the district court in Illinois. Judge Bennett and two other members of the Federal Circuit dissented, contending that the majority was in error in rejecting severance and that the question addressed by the "regional courts of appeals" in *Hayes* and *Wiggins* and kindred cases was not the question that confronted the Federal Circuit.[5] But, the dissent notwithstanding, *Williams* continues to be the governing doctrine in the Federal Circuit; no other court has expressed disagreement with it; and it is not challenged on this appeal.

The *Williams* majority was careful to point out the narrowness of the rule. "This holding is limited to situations in which the employee is challenging judicially the board's determinations of both the discrimination and the nondiscrimination issues. We express no view on whether we would have jurisdiction over cases in which the employee initially raised both issues before the board, but either abandoned the discrimination claim during the board proceeding or eschewed any judicial challenge of the board's ruling on that issue." 715 F.2d at 1491. But a month after *Williams* the Federal Circuit had occasion to consider the issue it had reserved. In *Meehan v.*

*United States Postal Service,* 718 F.2d 1069 (Fed.Cir.1983), the Postal Service fired Meehan, a distribution clerk, for threatening two supervisory postal officials. Meehan denied that the words uttered were a threat, and he alleged that he had been singled out for discriminatory treatment because "I have been in a predominantly black facility and I've filed numerous complaints." 718 F.2d at 1073. The MSPB sustained Meehan's discharge. Meehan then sought review in the Federal Circuit. The Postal Service moved to dismiss on the ground that Meehan's charge of racial discrimination deprived the court of jurisdiction. In an opinion by Judge Nies, the court declined to dismiss. The court pointed out that the pleading Meehan filed with the MSPB provided no examples of the claimed discrimination, and that Meehan had offered no evidence of discrimination. "Finally, and most importantly, Meehan's counsel represented that Meehan has no intention of filing a complaint to obtain *de novo* review of racial issues in a district court, and, in any event, the time for filing such a complaint has expired. This action is not now, and never will become, a 'mixed case.' No issue of racial discrimination has been raised on appeal and none can or will be raised." 718 F.2d at 1074.

Shortly after its decision in *Meehan*, the Federal Circuit, in *Hopkins v. Merit Sys-*

5. 715 F.2d at 1495–97 (footnotes omitted; emphasis in original):

None of the regional courts of appeals decisions cited by the majority, denying severance, deal with the issue before us in this case. In all of the cases cited, the petitioner was pursuing a discrimination claim in a district court and a nondiscrimination claim in the regional circuit court. The holding in those cases merely resulted in a *delay* of jurisdiction for the regional circuit court, as an appeal from the district court on both claims would eventually go to the same regional circuit court. It is certainly understandable that the regional circuit courts would not wish to undertake piecemeal review of a "mixed" case. By contrast, a "mixed" case transferred from this court to a district court would not, presumably, be subject to later review by this court.

\* \* \* \* \* \*

There is no doubt that a significant percentage of appeals from the MSPB involve allega-

tions of discrimination. The majority's holding will strip this court of jurisdiction in those cases in which a discrimination claim is appealed to the district court. As a consequence, the district court will often be deciding issues of civil service law, with appellate review occurring in the regional courts of appeals. In many instances, the discrimination claim will be rejected and the district courts (and the regional courts of appeals) will have to decide purely non-discrimination issues of the very type over which this court has been given exclusive jurisdiction. For all of these cases, the majority's decision will render Congress' grant of exclusive jurisdiction to this court a nullity.

*tems Protection Bd.*, 725 F.2d 1368 (Fed. Cir.1984), extended the teaching of *Meehan* to a case involving attorney fees: Hopkins was fired from his Department of Justice position as a deputy marshal. In seeking MSPB review of the firing, Hopkins charged that he had been discriminated against both because he was black and because he had poor vision. "The ... MSPB ... rejected both of Hopkins' discrimination claims but ordered Hopkins reinstated on the ground that his removal did not promote the efficiency of the service." 725 F.2d at 1370. Nineteen days after entry of the MSPB order, Hopkins filed a motion, pursuant to 5 U.S.C. § 7701(g)(1), for an award of attorney fees "in the interest of justice." "More than one year later the MSPB dismissed Hopkins' attorney fee request as untimely filed," *ibid.*—for the reason that MSPB regulations required the filing of such a motion "'within 10 days of final date of a decision [by the MSPB].'" *Ibid.* Hopkins sought review in the Federal Circuit. The Department of Justice moved for dismissal on the ground that Hopkins' case was, in *Williams* parlance, a "mixed" case. The Federal Circuit denied Justice's motion (*ibid.* (emphasis in original)):

> Justice's argument misses ... the nature of Hopkins' petition here. He is requesting review of the MSPB's dismissal for untimeliness of an attorney fee request, not review of the MSPB decision on the merits of Justice's attempted removal action. That MSPB decision on the merits was explicitly *not* based on either race or physical handicap discrimination grounds. More importantly, Hopkins himself has opposed the motion to dismiss because the case is no longer "mixed"; all parties have abandoned any claims relating to discrimination. Hopkins' position is both rational and practical: he has attained before the MSPB the objective he sought—reversal of Justice's removal and his reinstatement. It would be an academic exercise wasteful of both Hopkins' and judicial resources

for him to pursue review of his earlier discrimination claims. We have therefore denied Justice's motion to dismiss. *Meehan v. United States Postal Service*, 718 F.2d 1069 (Fed. Cir.1983).

Soon after *Hopkins*, the Federal Circuit revisited the same problem in *Wallace v. Merit Systems Protection Bd.*, 728 F.2d 1456 (Fed. Cir.1984). In *Wallace*, petitioner asserted in an appeal filed with the MSPB that his firing by the Army Corps of Engineers was discriminatory. The MSPB administrative law judge, *sua sponte*, dismissed the appeal as untimely—a dismissal the MSPB declined to disturb. Wallace sought review in the Federal Circuit. The government moved to dismiss the review petition. The Federal Circuit denied the motion to dismiss: "As in the *Tyler Hopkins* case, which sought review of the MSPB's dismissal for untimeliness of an attorney fee request, the Government misses the nature of the petition here. The sole issue is the correctness of the MSPB decision holding the appeal to the board was untimely, which in no way involves the merits." 728 F.2d at 1459.[6]

Looking chiefly to *Williams, Meehan, Hopkins,* and *Wallace,* the district court in the present case concluded that it lacked jurisdiction over Kean's petition to review the MSPB's cost-based award of attorney fees: "Plaintiff's appeal of the [attorney fee] formula does not rely on any aspect of the underlying claim other than that he was successful on it. In light of the case law permitting Federal Circuit court jurisdiction where a discrimination claim is no longer a part of a case, this court will dismiss the case without prejudice for plaintiff to pursue the matter before the Federal Circuit." Joint Appendix, pp. 65–66.

The cases chiefly relied on by the district court are like Kean's in that in none of them was the petitioner asking a reviewing court to reexamine the disposition by the MSPB of a claim that adverse agency ac-

---

**6.** *Accord: Blake v. Department of Air Force*, 794 F.2d 170 (5th Cir.1986); *cf., Hill v. Department of the Air Force*, 796 F.2d 1469 (Fed.Cir.1986) (frivolous allegation of discrimination does not oust Federal Circuit jurisdiction).

tion was discriminatory in nature.[7] The cases are, however, unlike Kean's in that in none of them had the petitioner, before coming to court, *prevailed,* as Kean did, before the MSPB, on *the claim of discrimination.* Moreover, the fact that Kean had prevailed before the MSPB on his claim of discrimination decisively shaped his further entitlement. That is to say, because Kean *had prevailed on a claim of discrimination*—namely, that he had been discharged in contravention of the Rehabilitation Act— he sought, pursuant to 5 U.S.C. § 7701(g)(2), an order from the MSPB requiring "the payment of attorney fees ... in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k))." 5 U.S.C. § 7701(g)(2). Conversely, Hopkins—having lost on his two discrimination claims but *having prevailed on a civil service ground*—sought, pursuant to 5 U.S.C. § 7701(g)(1), "payment by the agency involved of reasonable attorney fees" where it is determined "that payment by the agency is warranted in the interest of justice ..."

We think that this difference between Kean's case and Hopkins' case—two cases that, at first glance, seem quite similar—is, as it bears on the issues presented by this appeal, not incidental but vital.[8] In insisting that district courts should be the tribunals to which appeals of MSPB discrimination cases should be directed, the drafters of the Civil Service Reform Act of 1978 had in mind, as we have already observed, that "discrimination complaints involving employees outside the Federal Government are now considered by U.S. District Courts. To encourage uniformity in judicial decisions in this area both kinds of cases should continue to be considered by the U.S. District Court." S.Rep. No. 95–969, *supra,* at 63, U.S.Code Cong. & Ad.News 1978, 2785. Moreover, the Supreme Court has recognized that Congress regards implementation of the attorney fee award authority embodied in Section 706(k) of the 1964 Civil Rights Act as a major weapon in the arsenal of anti-discrimination law enforcement. In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63, 100 S.Ct. 2024, 2030–31, 64 L.Ed.2d 723 (1980), Justice Powell said for the Court:

> This Court recently examined the legislative history and purpose of § 706(k). In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), it was noted that, although the legislative history of § 706(k) is "sparse," 434 U.S., at 420, 98 S.Ct. at 699–700, it is clear that one of Congress' primary purposes in enacting the section was to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Ibid.,* quoting 110 Cong. Rec. 12724 (1964) (remarks of Sen. Humphrey). Because Congress has cast the Title VII plaintiff in the role of "a private attorney general," vindicating a policy "of the highest priority," a prevailing plaintiff "ordinarily is to be awarded attorney's fees in all but special circumstances." 434 U.S. at 416, 417, 98 S.Ct. at 697–98, 698.

The same sense of urgency animated the Congress which, in 1976, enacted the Civil Rights Attorney's Fees Awards Act, as an amendment to 42 U.S.C. § 1988.[9] Senate Report No. 94–1011, p. 2, U.S.Code Cong. & Admin.News, 1976, 5908, 5909—quoted by Justice Brennan in his concurring opinion in *Hensley v. Eckerhart,* 461 U.S. 424, 441,

---

**7.** *But cf. Hill v. Department of the Air Force, supra,* note 6.

**8.** Another significant difference is that Hopkins' petition to the Federal Circuit had a very narrow procedural objective—"review of the MSPB's dismissal for untimeliness of an attorney fee request," 725 F.2d at 1270—whereas Kean challenges the MSPB's substantive definition of a proper fee award. District court jurisdiction over substantive questions respecting the attorney fee "standards prescribed under section 706(k)" would not be incompatible with Federal Circuit jurisdiction over procedural questions respecting the MSPB's governance of the timing and format of attorney fee applications and kindred matters.

**9.** The attorney fee provision Congress added to § 1988 in 1976 has evidently been read by the Court as incorporating the § 706(k) principles Congress adopted in 1964. *See Blum v. Stenson,* discussed *supra,* p. 288, 465 U.S. at 894 n. 10, 104 S.Ct. at 1546 n. 10.

103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983)—put the matter this way:

All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court.

Under the rule contended for by the government, private sector employees, and state and local government employees, who have prevailed in discrimination cases arising directly under Title VII, or section 1983, or the Rehabilitation Act, or the Fair Labor Standards Act, would have their attorney fees determined by district courts and, on appeal, by the "regional courts of appeals," while their federal employee counterparts, having prevailed on discrimination claims before the MSPB in proceedings arising under the Civil Service Reform Act of 1978, would have attorney fees set by the Federal Circuit.[10] The resultant potential for disuniformity would carry with it a serious risk of defeating a Congressional "policy 'of the highest priority.'" *New York Gaslight Club, Inc. v. Carey, supra,* 447 U.S. at 63, 100 S.Ct. at 2030–31.

In short, we are not persuaded that, when Gary Kean prevailed before the MSPB on his claim of handicap discrimination and thereafter sought attorney fees, all questions of discrimination had dropped out of his case. To the contrary, the fact

that Kean has prevailed on the merits of his discrimination claim shapes his entitlement, pursuant to 5 U.S.C. § 7701(g)(2), to attorney fees "in accordance with the standards under section 706(k)." Section 706(k) standards are civil rights attorney fee standards which district courts are administering every day. Moreover—as the Federal Circuit was at pains to point out in *Goodrich v. Department of the Navy,* and to reiterate in *Devine v. National Treasury Employees Union,* discussed *supra,* page 288—the standards that inform civil rights fee awards grow out of the dynamics of civil rights law enforcement and are for that reason markedly unlike the standards for fee awards in non-discrimination federal personnel cases [11] which the Federal Circuit, on review of the MSPB, has exclusive judicial cognizance of.

Our view that the attorney fee phase of a meritorious discrimination case is part and parcel of the claim on the merits is confirmed by two cases, much like Kean's, in which district courts have entertained petitions for review of MSPB attorney fee orders.

The first case was *Wood v. Regan,* 622 F.Supp. 399 (E.D.Pa.1985). Wood, terminated on charges of dishonesty from his job at the Philadelphia branch office of the Mint, sought MSPB review; he challenged the termination on procedural grounds and on grounds of racial discrimination. While the matter was being heard by an MSPB administrative law judge, the Mint changed its mind and restored Wood to his job. The MSPB then dismissed what it viewed as a moot proceeding; but Wood filed a petition for attorney fees—a petition which the MSPB denied. When Wood petitioned the District Court for the Eastern District of Pennsylvania to review the denial of attorney fees, the government moved to dismiss for, *inter alia,* lack of jurisdiction. Judge Newcomer denied the motion (622 F.Supp. at 401–02):

---

**10.** Indeed, the rule contended for the government would appear likely to entail the further anomaly that federal employees, like Kean, who *prevail* on their discrimination claims before the MSPB would be directed to the Federal Circuit for judicial review of MSPB attorney fee awards, while federal employees who *lose* on their discrimination claims before the MSPB

and then *prevail* on a petition to review filed in a district court would also have attorney fees set by the district court or, after remand to the MSPB, by the MSPB subject to review by the district court.

**11.** *See* note 3, *supra.*

[T]his case is properly before this Court rather than the United States Court of Appeals for the Federal Circuit. As noted above, cases of discrimination subject to § 7702 are to be filed under 42 U.S.C. § 2000e–16(c), which confers appellate jurisdiction upon the district courts by reference to § 2000e–5(f) and gives them power to award attorneys fees by reference to § 2000e–5(k). None of the cases the defendant cites in support of its assertion that the case should be brought before the Federal Circuit Court of Appeals involves petitions for attorneys fees. Moreover, they are distinguishable in other ways. In *Meehan v. U.S. Postal Service,* 718 F.2d 1069, 1073 (Fed.Cir.1983), the plaintiff failed to assert in his petition a clear basis for alleging discrimination or to offer evidence of racial discrimination when appealing his discharge before the MSPB.

Wood, in contrast, specifically indicates the manner in which he believed he was discriminated against, as discussed above. In both *Wallace v. Merit Systems Protection Board,* 728 F.2d 1456 (Fed.Cir.1984) and *Hopkins v. Merit Systems Protection Board,* 725 F.2d 1368 (Fed.Cir.1984), the Court of Appeals retained jurisdiction because it was ruling on the timeliness of the plaintiff's petition rather than on the merits of the appeal. Wood's appeal, in contrast, involves the merit of the MSPB's decision not to award attorneys fees when a matter raising issues of discrimination has been settled.

This Court, then, has jurisdiction under § 7703(b)(2) to hear plaintiff's case.[12]

The second case was *Seibel v. Lehman,* supra, note 3, in which the late Judge Blumenfeld, sitting in the District Court for the District of Connecticut reviewed the

---

**12.** The government apparently now acknowledges that the position it took before Judge Newcomer was mistaken, for in its brief to this court in the instant case the government says, with respect to *Wood v. Regan,* "The district court properly ruled that it had jurisdiction to review the MSPB's denial." Brief of Appellees, p. 12. The government then goes on to explain why it was proper for the district court, "as a fact-finder," to retain jurisdiction. "The court based its decision on the fact that it would have to review the merits of the plaintiff's discrimination claim to determine whether plaintiff did have a discrimination claim as the basis for an award of attorney fees under 5 U.S.C. § 7701(g). In other words, the court, as a fact-finder, first had to determine whether the plaintiff did prevail on a non-frivolous discrimination claim before it could determine the correctness of an award of attorney fees under the statute." Brief of Appellees, pp. 12–13.

The government's characterization of what the court did in *Wood v. Regan* is hard to square with Judge Newcomer's own recital of the path he pursued in determining that Wood was entitled to attorney fees under § 706(k) of the 1964 Civil Rights Act:

Admittedly, there are sound reasons to bar a plaintiff in Wood's position from raising the issue of attorneys fees once a case has been settled: the grounds for the parties' decision to settle are not always clear. The Mint did not necessarily concede the issue of discrimination—it may have reinstated Wood to avoid the time, expense, and effort of litigation, or because it recognized that its procedures in such circumstances, though not discriminatory, were faulty. Wood himself alleges that

there were procedural irregularities, and it is not clear if these alleged irregularities are exclusively related to discrimination.

Obviously, the parties could have avoided the dispute with which I am presented by addressing the attorneys fee issue in their settlement. Apparently they did not. Case law under similar attorneys fee provisions suggests that, in such circumstances, the Court may award attorneys fees to the prevailing plaintiff.

\* \* \* \* \* \*

Just as the constitutional issue in [*Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ] and the issue of discrimination in [*Young v. Kenley,* 641 F.2d 192 (4th Cir.1981) ] remained in those cases until the entire disputes were settled by entry of consent decrees, the issue of discrimination remained in Wood's case until settlement was reached. It is undisputed that Wood is the prevailing party, attaining his objectives of reinstatement and back pay and benefits. Since it appears highly unlikely that Congress intended to require that a specific finding of discrimination be made before plaintiffs in employment discrimination actions against the government can be awarded attorneys fees, the Mint's motion for summary judgment will be denied.

I also reject the government's contention that the merits of plaintiff's claim must be litigated before me so as to determine the validity of plaintiff's discrimination claims. Such a procedure would make settlement meaningless. Accordingly, plaintiff will be ordered to submit his attorneys fee petition to the Court.

sufficiency of the attorney fees awarded by the MSPB in *Seibel v. Department of the Navy, supra,* p. 280. There, in a case where, as in Kean's case, the discharged federal employee had prevailed before the MSPB on a claim of handicap discrimination, the MSPB had, as in Kean's case, fashioned a cost-based award. Judge Blumenfeld reversed the MSPB.[13] Judge Blumenfeld's opinion does not address any jurisdictional question. It would appear that the government did not challenge the district court's jurisdiction in that case.

Because we think that Judge Newcomer was correct in exercising jurisdiction in *Wood v. Regan* and that Judge Blumenfeld was correct in exercising jurisdiction in *Seibel v. Lehman,*[14] we conclude that the district court in which Kean filed his petition for review of the adequacy of the MSPB attorney fee award has jurisdiction to review that award.

Accordingly, the judgment of the district court will be reversed and the case remanded for proceedings consistent with this opinion.

---

**13.** *See* note 3, *supra.*

**14.** Of course we intimate no views as to the correctness of the substantive decisions arrived at by Judge Blumenfeld and Judge Newcomer. Those issues are not before us on this appeal.